J. E. CALHOUN, Appellee, v. C. B. ROBINSON, Appellant.

**PLEADING:** Amendment—Dictating into Trial Record. An amend-
ment, dictated to the reporter and entered in the shorthand
notes of the trial without objection by the other party, has the
same standing as one made on separate paper, as required by
Section 3603, Code, 1897.

**EQUITY:** Decree—Scope and Extent—Making New Contract for
Parties. Equity, under a prayer for general equitable relief,
may, in an action to enforce a contract *which proves utterly
impractical,* so shape its decree as to depart from the strict terms
of the contract when, by so doing, the actual purposes of the
parties will be carried out and justice be done to both parties.
So held where, by contract, a tile drain was to be placed in a

specified course across certain lands, which course proved utter-
ly impracticable, owing to the topography of the land. See Sec-
tion 3775, Code, 1897.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

MONDAY, JUNE 25, 1917.

ACTION in equity to enjoin defendant from laying cer-
tain tile from his land to a ditch on the plaintiff's land, con-
trary, as plaintiff alleges, to the terms of a written contract
between the parties in reference thereto, by reason of which
plaintiff alleges that defendant is collecting water from his
land by tile drains and casting it upon the land of plain-
tiff. There was a decree for plaintiff, and the defendant
appeals.—*Affirmed.*

*Voris & Haas,* for appellant.

*A. W. Fisher* and *C. W. Kepler,* for appellee.

PRESTON, J.—The petition alleged, in substance, that
the parties were each owners of 40 acres of land, that of the
defendant lying to the north of and adjoining plaintiff's
land; that the north side of plaintiff's land is somewhat
lower than the land of the defendant and is very level, hav-
ing no ditch or watercourse through it, and slopes very
gently to the south for some 55 rods, to an open or artifi-
cial ditch on plaintiff's land, running east and west, which
last-named ditch carries off to the west the water enter-
ing it; that, while defendant's land is lower than plaintiff's,
the same is very swampy and wet, and the water stands
thereon; that, to carry off this surplus water, defendant has
put in two strings of tile, each about 160 rods in length, and
extending down to within a few feet of the south line of
his land; that, where the said two strings of tile stop, near
the line between the parties, the tile are at a depth of only
about 18 inches from the surface; that the said tile empty
their surplus water which is drained from defendant's land

on the surface, and it spreads out over about 10 acres of plaintiff's farm, making it too wet to farm; that said water so cast upon plaintiff's land would, if not so tiled, stand upon defendant's land until it soaked away or evaporated; that the flow of water upon plaintiff's land has been materially increased and materially damaged his land; that, in order to take care of the said surplus water, the parties entered into a written agreement on May 29, 1915, whereby defendant agreed to take care of the surplus water and to carry the same in a string of 6-inch tile to the east and west ditch south of defendant's line and across the land of plaintiff, and to put the said tile in the ground in good condition; that, notwithstanding the agreement, defendant has constructed a ditch across plaintiff's land from 16 to 25 inches in depth, and is intending to and will place the said 6-inch tile therein; that said agreement expressly states that the said 6-inch tile shall be put in in good condition, and in order to do so, the tile ditch should be from 36 inches to 42 inches in depth; that, when said 6-inch tile are so placed in the ditch, the top of the tile will be from 10 to 18 inches from the surface; that said defendant has also constructed his tile ditch lower through portions of this course than at the outlet of said ditch, so that the water will not run out of said tile, but will back up and fill the tile on plaintiff's land, causing the water to soak out through the tile and again overflow plaintiff's land, causing him irreparable injury; that the tile so placed at a depth of from 10 to 18 inches from the surface will be easily misplaced by the farming of the land, and will fill up in a short time, and will not discharge the water flowing into them from the defendant's land. He prays that defendant be restrained from putting in said tile at or near the surface, and that defendant be made to place the said tile in the ground at a depth of from 36 to 42 inches, to carry off the said water.

Answering, defendant admitted certain of the allega-

tions of the petition as to the lay of the ground, the til-
ing on his own land, and so on, and averred that the east
and west ditch on plaintiff's land had been constructed
many years ago, and had become enlarged so as to become
a well-marked watercourse, with channels and banks; ad-
mits also the execution of the contract, and that it was in
order to adjust the contention between plaintiff and defend-
ant on account of the water flowing from the ends of de-
fendant's two strings of tile; says that plaintiff knew, prior
to the execution of the written contract, that defendant's
tile drains were about 20 inches below the surface of the
ground at their terminal points; that the written contract
was entered into as a settlement of the controversy, and
that thereby defendant was to put a 6-inch tile across
plaintiff's land, to run south, or in a southerly direction;
that, in compliance with the contract, defendant purchased
sufficient 6-inch tile to connect his two tile ditches with the
ditch on plaintiff's land, and began the laying of tile in a
ditch dug for that purpose, just as deep in the ground as
the same could be laid between the two ends of the said 6-
inch tile and leave fall enough so that the water would flow
in said tile, on account of the level condition of plaintiff's
lands and the depth of the terminal points or ends of defend-
ant's two tile drains and the depth of said ditch on the lands
of plaintiff, and had the same nearly completed, when
stopped from fully completing the contract by the tempo-
rary injunction; that the depth at which the said 6-inch
tile would have to be laid between the terminal points of
defendant's two strings of tile and the bottom of the ditch
on plaintiff's land, and the level condition of plaintiff's land
between, were known to plaintiff at and prior to the making
and entering into the said written contract; that, had de-
fendant been permitted to complete the laying of said 6-
inch tile, same would completely carry off and discharge all
the water from defendant's tile, and the 6-inch tile on plain-

tiff's land would· have been of sufficient depth as to in no manner interfere with the successful cultivation of plaintiff's land.

The written contract provides:

"That, whereas the party of the first part (Robinson) has constructed two strings of tile of about 320 rods in length on his farm (description), and carries his surplus water from the said land down to and casts the same on the surface at or near the south line of the said land where the said tile empty all their water on the surface at or near the north line of the second party's land (description), causing the same to overflow on said land, and

"Whereas the party of the first part is desirous of taking care of said water and not allow the same to overflow land of said second party,

"It is therefore agreed by and between said parties that said C. B. Robinson, party of the first part, shall put in a string of 6-inch tile connecting with the two said strings of tile, and run the same straight south across the land of the second party to the creek about 55 rods south. Said party of the first part to furnish said tile, put the same in in good condition, and as all tile are placed in the ground, at his own expense, as soon as the weather and condition of the land will admit, but said party of the first part shall not be liable for any damages to the crops that he may injure while putting in said tile."

It will be noticed that, while the contract provides that defendant is to put in the 6-inch tile across plaintiff's land, which are to run straight south, it does not state the depth at which the same should be placed. There is testimony·on behalf of plaintiff tending to show that the ground is a little higher immediately north of the east and west ditch than it is further north. It appears that plaintiff had prepared injunction papers against defendant, which were exhibited to the defendant on the day of, but prior to, the ex-

ecution of the contract. It is quite clear from the record that the main purpose of the agreement was to enable defendant to take care of the surplus water which had been discharging on plaintiff's land, and plaintiff contends that the arrangement was for the benefit of the defendant, and that plaintiff consented to such arrangement as a matter of neighborly accommodation. The defendant began digging the ditch for the 6-inch tile at the east and west ditch on plaintiff's land, and worked north from this ditch. At this point, the east and west ditch is about 17 inches deep, where defendant began to tile, and about 12 inches wide, and increases as it goes west, both in depth and width.

The court, by its decree, found that it is impossible to place the 6-inch string of tile straight south from where the water is brought down and cast upon the land of plaintiff by defendant, owing to a rise in the surface of the ground near the open ditch, which rise of ground was unknown to the parties to the contract when the same was entered into; that the natural slope of the land from where the water is brought down and cast upon the land of plaintiff is south about 200 feet, thence gradually sloping in a southwesterly direction about 48 rods to the open ditch; that, owing to the rise of ground near the open ditch, defendant was unable to place the tile at the proper depth to carry off the water, and that said water remained on plaintiff's land, to his detriment; that the tile so placed in the ground should be removed; that, in order to carry out the agreement and intention of the parties to the contract, the tile should be placed where it can be laid at a proper depth, and carry off the said surplus water which the defendant cast upon the land of plaintiff; that plaintiff should remove the south 600 feet, or thereabouts, of the tile in the ditch now constructed, and fill the same at his own expense; that defendant could use said tile in a new ditch to be constructed as required by the

court. The decree required defendant to take up the north 200 feet of the tile now in the ditch and replace the same in the same ditch at the proper depth, not less than 30 inches from the surface of the ground, and to construct the rest of said ditch in a southwesterly direction from said point to the open ditch, about 48 rods southwest, and to properly lay said tile at a depth of not less than 36 inches, and that plaintiff should pay defendant the sum of 40 cents per rod for digging the said 600 feet of tile ditch so abandoned, and furnish at his own expense, for the defendant's use, not to exceed 5 rods of tile.

1. PLEADING: amendment: dictating into trial record.

1. The prayer of plaintiff's petition did not ask for general equitable relief. The abstract recites that, before the evidence was closed:

"At this stage in the proceedings, the plaintiff, by his attorney C. W. Kepler, asked leave of court to amend his petition by adding, 'For such other and further relief as to the court may seem proper,' and such attorney, C. W. Kepler, said, 'With leave of court first had and obtained, the plaintiff at the close of the testimony amends the prayer of his petition, and amendment thereto, by adding thereto: "And such other and further relief in equity as to the court may seem equitable and just between the parties." ' No such amendment was ever made or filed in said cause, and nothing further done in relation thereto, and the above and foregoing leave to amend was asked as stated, and an oral statement of plaintiff's attorney in relation thereto as above quoted from the record."

We take it from this that plaintiff orally dictated into the record, which was taken down by the reporter, this so-called amendment, because the abstract recites that the statements so made were as quoted from the record. It is contended by appellant that the court had no authority to grant general equitable relief, because this amendment was

not made in accordance with Code Section 3603, which provides substantially that amendments must be made upon separate paper, which shall be filed, and constitute, with the original, but one pleading.

We think it is common practice for counsel, during the hurry of a trial, to dictate amendments or pleadings into the record, in order to save the time of the court. This is often done, with the consent of counsel, or sometimes it is so taken by the reporter and run off and filed afterwards. The defendant made no objection at the time to the amendment's being made in this manner, and made no motion to strike it because not filed in accordance with the statute. By his conduct, we think appellant consented to the amendment's being made in this way, and waived the objection now made, and that the court, in the determination of the case, properly considered this as an amendment to the prayer of the petition.

2. Appellant's next proposition is that, 2. EQUITY: decree: scope and since the contract provided that the 6-inch extent: making new contract tile should be laid by defendant straight for parties. south, the court had no authority to grant plaintiff the relief it did by requiring the tile to be laid in a southwesterly direction a part of the way. Reliance is placed upon Section 3775 of the Code, which provides:

"The relief granted to the plaintiff, if there be no answer, cannot exceed that which he has demanded in his petition. In any other case the court may grant him any relief consistent with the case made by the petition and embraced within the issue."

Cases are cited in support of the proposition. The thought of appellant is that the court made a new contract for the parties. Among other allegations of the petition, it is charged that the tile, as it was being laid by the defendant, was not deep enough to carry off the water into the open ditch, and that, as the tile was being laid, it was

throwing the water back on plaintiff's land. The petition asked, substantially, that appellant be decreed and ordered to place his tile over plaintiff's land so as not to damage him. This was substantially the prayer of his petition, especially so when, under the amendment, general equitable relief was asked. We think the relief granted was consistent with the case made by the petition and the answer, and therefore embraced within the issues.

There is testimony on behalf of the plaintiff, though denied by the defendant, that the lay of the land immediately north of the open ditch was higher than it was some distance farther north, and that it would be impossible for the water to flow into the open ditch through the tile laid at the depth and in the manner in which it was being laid by the defendant; and it is undisputed that, because the open ditch running east and west was deeper and wider a short distance west of a point straight south, and because of the lay of the ground, the tile could be laid in such a way and to such a depth as to carry off the water by running the ditch west and south to the open ditch. We think the evidence justifies such a finding.

We shall not review the testimony at length, because it is somewhat extended, and this point seems to have been really the main controversy on the trial. It is not our practice in equity. cases to set out the evidence in detail, since it can serve no useful purpose. In addition to the testimony introduced on behalf of plaintiff, we think the physical facts are such as to corroborate his testimony at several points. The defendant admits that, as he at first prepared the ditch for the 6-inch tile, it was wrong; that the tile was lower some distance north of the open ditch than at the point where it empties into it; but he claims to have remedied it. He admits also that, during the progress of the work, plaintiff's attorney desired that he (defendant) should put the ditch deeper at the south end. The attor-

ney requested that he put it 3 feet deep, and defendant
admits that he told the attorney he would put it deeper,
provided plaintiff would furnish him an outlet. This could
not be done at a point straight south, because the tile as
laid into the open ditch was laid in the bottom of it. There
was a dispute in the testimony as to some other points;
for instance, as to whether the tile, as laid so near the sur-
face, would be heaved by the frost, and as to whether horses
would break through in farming, and as to whether the
condition as described by some of the witnesses one time
was not occasioned by the injunction's stopping the work
so that the ditch became filled with mud, etc. But we do
not regard these circumstances as controlling.

There was also testimony on behalf of plaintiff, though
denied by the defendant, that, at the time of the execution
of the written contract, it was not known that the land
was higher just north of the ditch than it was farther north.
It is contended by appellee that this was somewhat in the
nature of a mistake, which, under the circumstances, a court
of equity would be justified in considering, in order to
carry out the purpose and intention of the parties. The
recital in the contract that the 6-inch tile was to run
straight south is a mere incident to the main purpose of
the parties in entering into the contract. As before stated,
it is clear that the purpose of the parties was to take care
of defendant's surplus water, by taking it to the open
ditch through a 6-inch tile, in order to relieve the defend-
ant of threatened litigation, and that plaintiff should not
suffer damage by reason of defendant's collecting the water
and throwing it upon plaintiff's land. Under the circum-
stances, it was impossible to do this by carrying the water
straight south, because to so do would nullify entirely the
provisions and the main purpose of the parties in entering
into the contract, and thus plaintiff would secure no relief
whatever, and would be compelled to submit to the water's

being brought from defendant's land onto plaintiff's land, some 400 or 500 feet north of the open ditch. Running the 6-inch tile to the west and south, instead of straight south, would require the laying of about 10 rods more tile, and, under the decree, the plaintiff was required to bear a part of this expense, and plaintiff was also required to pay a considerable part of the expense of changing the course of the other part of the ditch, and 'the laying of the other tile. The plaintiff has not appealed, and makes no complaint of this, but we think the decree was just and equitable to the defendant in this respect.

It should have been stated before that the laying of the tile was not entirely completed, although the ditch for the 6-inch tile was dug from the open ditch on plaintiff's land to, or nearly to, the south end of defendant's two strings of tile; but the tile had not all been laid therein.

Appellees cites Story's Equity Jurisprudence (13th Ed.) Vol. 1, as follows:

"Sec. 27. But there are many cases in which a simple judgment for either party, without qualifications or conditions or peculiar arrangements, will not do entire justice *ex aequo et bono* to either party. Some modifications of the rights of both parties may be required; some restraints on one side or on the other, or perhaps on both sides; some adjustments involving reciprocal obligations or duties; some compensatory or preliminary or concurrent proceedings to fix, control or equalize rights; some qualifications or conditions, present or future, temporary or permanent, to be annexed to the exercise of rights or the redress of injuries. In all these cases, courts of common law cannot give the desired relief. They have no forms of remedy adapted to the objects. They can entertain suits only in a prescribed form, and they can give a general judgment only in the prescribed form. From their very character and organization, they are incapable of the remedy which the mutual

rights and relative situations of the parties, under the circumstances, positively require.

"Sec. 28. But courts of equity are not so restrained. Although they have prescribed forms of proceeding, the latter are flexible, and may be suited to the different postures of cases. They may adjust their decrees so as to meet most, if not all, of these exigencies; and they may vary, qualify, restrain, and model the remedy so as to suit it to mutual and adverse claims, controlling equities, and the real and substantial rights of all the parties."

Appellee contends that the decree of the trial court was more favorable to the appellant than to the appellee; but, as said, appellee makes no complaint of this. At any rate, applying the rule as laid down by Story, we think the court was warranted in rendering the decree it did, which enables the parties to carry out the purpose of the contract and metes out substantial justice to the parties.

It is our conclusion that the decree of the trial court was right, and it is, therefore,—*Affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.