J. I. McDowell, Administrator, Appellee, v. Interstate Oil Company, Appellant.

No. 39502.

March 5, 1929.

Rehearing Denied June 24, 1929.

*Brackney, Farr & Stockman,* for appellant.

*Jepson, Struble, Anderson & Sifford* and *W. A. Dutton,* for appellee.

Kindig, J.—J. I. McDowell, administrator of the estate of Joe Robert McDowell, deceased, the appellee, as plaintiff,

brought an action in the district court of Woodbury County against the appellant, Interstate Oil Company, a corporation, as defendant, seeking to recover damages for the wrongful death of Joe Robert McDowell.

One question is decisive of this controversy. It relates to the proximate cause of the said injury, death, and resulting damages. Appellant's negligence in the operation of a motor truck is made the basis for the redress demanded. At the time of the accident, on the afternoon of December 22, 1926, the motor truck driven by appellant's employee was proceeding in a southerly direction over Summit Avenue, a north and south street in Sioux City. Eleventh Street in that municipality is an east and west thoroughfare, and intersects Summit Avenue at right angles. When appellant's vehicle proceeded into Eleventh Street, appellee's intestate, Joe Robert McDowell, a boy seven years of age, was coasting westward over the snow and ice on that public way, and collided with the motor truck. From the injuries thus received, the little boy died within a few hours.

Both Summit and Eleventh Streets are rather steep at the intersection. Summit slopes south, while Eleventh inclines to the west. Apparently the truck and the sled entered the intersection at about the same time, but because of the ice, the motor vehicle slid across the intersection, and the sled went under it. Proceeding on the ice, the motor vehicle evidently took a southwestward course to the curb, carrying the child and his sled, where the entire machine swung around, and the rear wheels pinned him against the curb.

Manifestly, Summit Street from the alley north of Eleventh Street down across the intersection was a sheet of smooth ice. Likewise, other public thoroughfares were slippery in Sioux City at that time. Such, in a general way, is a bird's-eye view of the situation.

Appellee predicated his right to recover against appellant upon the following grounds of negligence: First, that the vehicle was propelled at an excessive rate of speed, in violation of the state laws and city ordinances; second, that, because of the icy condition, the truck should not have been operated over Summit Avenue; third, that the driver did not keep a proper outlook as he approached Eleventh Street; fourth, that the wind shield was clouded or unwashed, so that it was impossible to

properly see through it; fifth, that the truck was proceeding to the left of the center line of Summit Street; sixth, that, while approaching and proceeding across Eleventh Street, the operator gave no signal or warning sign of his approach. The contention is made by appellant that, under the record, it was not guilty of any such negligent acts, either through commission or omission, and furthermore, that, if there was carelessness in the manner and way suggested, it was not the proximate cause of the unfortunate death. A motion, therefore, was made by appellant, not only for a directed verdict, but also to withdraw certain of the enumerated charges of negligence from the jury.

Convenience suggests the consideration of each alleged negligent act in the order named.

I. During part of the trial, it was appellee's theory that appellant, in the operation of its truck, exceeded the speed limit under the state law, because the vehicle moved faster than 20  miles per hour. Proof was offered accordingly. Two witnesses were presented by appellee concerning the rate of speed. They were Mrs. J. A. St. Onge and John Agnes. Mrs. St. Onge said: "He [the truck driver] was going between 15 and 20 miles" per hour at or near the alley north of Eleventh Street. While John Agnes stated: "The McDowell boy on his sled was going at approximately 20 miles an hour,—something like that. * * *" Then, referring to the truck, the witness continued:

"Well, it [the motor vehicle] was going a little faster than the boy was [the McDowell boy on the sled]. * * *"

That had reference to the speed of the vehicle as it was approaching and entering the intersection. Evidently during the hearing in the district court, appellee amended his petition, alleging the existence of a city ordinance fixing the speed limit for such trucks at 12 miles per hour. Upon this, as well as the state law, appellee endeavors to sustain the judgment of the district court. Contradiction of appellee's witnesses in reference to the speed is made by the truck driver. Parenthetically, it is noted that the latter estimated his speed to be not greater than 8 or 10 miles per hour. Of course, the conflict at this juncture presented a jury question, and that is conclusive. Clearly, the dispute

would end there, were it not for the further record relating to proximate cause.

Violation of a speed law or ordinance constitutes negligence. *Healy v. Johnson,* 127 Iowa 221; *Wolfe v. Chicago, G. W. R. Co.,* 166 Iowa 506; *Johnson v. Kinnan,* 195 Iowa 720. But that is not enough to warrant a recovery for damages unless such negligence was the proximate cause of the injury. Irrelevant carelessness will not suffice. There must be some causal connection between the act of negligence and the resulting damages. *Tackett v. Taylor County,* 123 Iowa 149; *Forsythe v. Kluckhohn,* 150 Iowa 126; *Lockridge v. Minneapolis & St. L. R. Co.,* 161 Iowa 74; *Johnson v. Kinnan,* supra; *Carlson v. Meusberger,* 200 Iowa 65. In *Forsythe v. Kluckhohn,* supra, in discussing a failure to observe an ordinance relating to a dog's running at large without a muzzle, it was said:

"The unlawful act, then, of the brindle pup was not in being on the street, but in being there without wearing proper apparel, and the defendant's fault was in permitting such freedom. But unless this error of the dog and fault of the man had something to do with causing the injury, there should be no recovery."

So, in the case at bar, the truck's excessive speed as an act of negligence is quite irrelevant unless it contributed to the death of Joe Robert McDowell.

Appellee's witnesses testified to the following effect: Philip Arthur Parks, who drove appellant's truck, made this statement:

"I was taking the truck back to the main plant of the Interstate Oil Company for more oil. * * * The truck is a three-ton International truck. * * * It holds 1,061 gallons. * * * There were tire chains on the rear wheels. * * * The chains had sharp lugs on them, so that they would catch the ice or snow, and had extra cross chains * * *. There were hard rubber tires on the truck. * * * The lugs would cut anything they came in contact with, less resistant than iron."

Mrs. Frances Rickert made this statement:

"I was afraid to step outside without my overshoes on * * * [because it was so icy]. I think the smooth icy condition continued up Summit Street for some distance to the north of Eleventh

Street. That condition had continued for some days. It had been icy. * * * I thought both [the truck and the little boy's sled] were coasting. I could see both of them. * * * I thought the truck was sliding as a sled. * * * I don't think he [the driver of the truck] stopped. I think he slid into the intersection. * * * I thought the truck was coasting because it was so slippery they couldn't do anything else. I thought the rear wheels were sliding * * * skidding. * * * I thought the back wheels were sliding down the hill. I thought they were blocked."

Joe Agnes asserted:

"The truck was sliding when I first saw it. The wheels were sliding. * * * I guess it was going about the same rate as when it started to slide. It slid across the intersection."

James Deignan supplied the following:

"* * * The truck was skidding at that time. It skidded clear across the intersection. * * * I noticed skidding tracks after the accident, leading right up to where the truck stopped. They went pretty near to the corner of Twelfth and Summit, and we could still see them,—that is, a block north of where the accident occurred,—and the tracks even went further than that. * * * Q. He was skidding all the time that you saw him? A. Yes."

John Agnes continued:

"I could see the truck coming, shortly before it reached the intersection of Eleventh and Summit Streets, while Bobby McDowell was proceeding down the hill, ahead of my brother. When I first saw it [the truck], it was skidding all the time until it stopped. * * * It skidded clear across the intersection to the point where it stopped."

Mrs. St. Onge again supplies the following information:

"Summit Street down and across Eleventh Street was a mass of ice * * *. The ice was smooth. * * * I noticed some of the marks on the ice, indicating the skidding of a truck. I followed them for a quarter of a block. They extended north of the intersection of Eleventh and Summit Streets. * * * The car was sliding down, with chains on."

Philip Parks (the truck driver), while testifying for appellant, gave his version of the accident in this way:

"I was coming down the Summit Street hill * * *. I did not see any boy on a sled at any time until I got to the intersection, or right close to the intersection. I then saw two of them, and pretty near down the hill at that time. Two of them on sleds. * * * I could see up the street quite a ways, and they were about half way down the hill. * * * When I saw this boy coming, I pulled the brake on tight, and locked the hind wheels, and turned over to the curb."

On cross-examination, the witness added:

"The street at that time on that particular day was a mass of smooth ice. A heavy truck is not always harder to hold on a hill than a lighter vehicle. That all depends on the condition. The conditions at that time were pretty bad. * * * The truck skidded all the way across the intersection and part way past the intersection on Eleventh Street. The street was icy all the way down Summit Street and across the intersection of Eleventh and Summit. * * * I had the truck under control. I couldn't stop it right on the point, but I could have stopped it any place up there [above the point]. That was before I passed the alley. After I passed the alley, I don't know as to stopping it. * * * I couldn't stop it after I passed the point where I saw up Eleventh Street, because I tried it there. I could easily have stopped it * * * at a point north of the alley."

Plainly, the proximate cause of Joe Robert McDowell's death would not be the speed, if the excessive movement of the vehicle was due to the icy street. Nor would the proximate cause of that death be the speed if, under the circumstances, the brakes' failure to hold and timely stop the truck was not because of the rapid motion, but rather, resulted from the street's icy condition. Conversely, if the unlawful rate of speed was due, not to the ice, but the driver's negligence, and he was thereby prevented from controlling and safely stopping his vehicle, it would be the proximate cause of the death. These questions must be determined from all the facts and circumstances in the record. Our discussion of this subject is interposed for the purposes of the retrial which must result from errors hereafter to be discussed.

II.   Nevertheless, appellee argues that it was negligent for the operator of the truck to go upon Summit Street at all, because of the ice.   That, of course, must depend upon the conditions and circumstances involved.   What would  be negligence in one instance might not be in another.   While testifying as appellee's witness at this juncture, Philip Parks, the driver, indicated:

"This [over Summit Street] was the customary way to travel in going to and coming back from Sunset View, when it was as icy as it was this day, because going down Pierce Street was a steeper hill and lots more travel than to come down this way.   I do not believe I could have gone back to Grand Street on a route that would have had less grade than this one.   I was going to West Seventh Street when the accident happened.   To have gone around from the west and hit West Seventh Street farther west would have necessitated going down Fourteenth Street hill, and there were cars piled up at the bottom of that hill then, and it was a steeper hill than to come this way."

Contradiction of this testimony is not found in the evidence. Furthermore, Summit Street was open for travel, and was used by the public generally at the time in question.   A conflict of evidence did not arise, and there was no issue for the jury here. For the purposes of the retrial, we suggest that, under the present record, the district court was right in not submitting the issue.

III.   Next, it is said by appellee that the driver did not keep a proper outlook, and accordingly the judgment of the district court should be sustained.   The driver says he did properly and  timely look and observe before and at the intersection.   To successfully contradict this, appellant relies upon physical facts: to wit, that the boy on the sled was not sooner seen (although he should have been), and the truck more quickly stopped.

Again it is necessary to consider the law relating to proximate cause, as above set forth.   Philip Parks, who was driving the truck, did see the child as he was sliding down the hill; and thereupon set the brakes.   Indication is made by every witness that the brakes were thus applied, and that the wheels were   .

locked before Eleventh Street was reached. Yet, because of the icy condition, there was skidding and sliding. Said "skidding and sliding," and not the lack of observation, caused the minor's death. Without dispute, it appears in the record that the "sliding and skidding" would have occurred just the same, had observation been earlier made and the brakes applied farther up the Eleventh Street hill. Submission of this ground of negligence to the jury, then, was erroneous.

IV. An additional ground of negligence was the clouded and dirty wind shield. What has just been said in reference to the outlook applies with equal force here. Some evidence was introduced to the effect that the wind shield did not appear clean. Notwithstanding that, however, the driver did make observation, saw the little boy on the sled, and applied the brakes; but, because of the ice, they did not hold. Therefore, this alleged negligence was not the proximate cause of the injury, and should not have been presented to the fact-finding body.

V. Continuing the chronological consideration of the various items of negligence, it is found that the next in order relates to the truck's being on the left of the center line of Summit Street.

To avoid repetition of what has been said in reference to proximate cause, it is briefly suggested that the truck could not be controlled, because of the ice. If there is any distinction between this proposition and the other matters discussed, it is in the fact that the record shows the skidding beyond a peradventure of a doubt, while the lack of ability to steer the vehicle is not so manifest. Everyone knows, however, that it is difficult, if not impossible, to guide a motor vehicle on slippery ice. This specific item named in the petition was not submitted to the jury by the trial court. In any event, if there is a record warranting such submission in the future, the jury should be informed that appellant would not be liable if the operator, because of the street's slippery condition, could not, under the circumstances, manage the truck. Furthermore, it does not appear that being on the wrong side of the street was the proximate cause of the accident, because the collision occurred at or near the center of the intersection. More than this, it is doubtful whether or not the evidence was sufficient for the jury to have said that the

truck was on the wrong side of the street. The witness James Deignan, regarding this, said:

"The truck and the sled on which Bobby McDowell was riding went pretty near in the center,—a little to the west,—mostly in the center."

Mention of this subject is made here in order that there may be a guide for the retrial.

VI. As a final basis for recovery, appellee pleaded that appellant failed to give a signal or warning sign of his approach. However, the court, in submitting the issues to the jury, under Instruction XVII, apparently did not include that particular ground of negligence. Appellee, of course, is not in a position to complain about it. Resultantly, the only reason we refer to it is out of consideration for the retrial. Consequently, if, upon that occasion, there is sufficient evidence under the allegations, the cause of action arising therefrom should be submitted to the jury. Even though there was ice and the truck was skidding, the proper warning signal should have been given.

Other matters are discussed, but it is not necessary to consider them, because of the position we have taken in reference to the proximate cause doctrine.

Wherefore, because of the prejudice accruing from the errors aforesaid, appellant is entitled to a new trial, and accordingly the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.