W. A. LUSE, Administrator, Appellee, v. LEONARD NICKOLEY, Appellant.

No. 45730.

DECEMBER 9, 1941.

OPINION MODIFIED AND REHEARING DENIED MARCH 20, 1942.

Newberry & Gross and Estey & Estey, for appellee.

Hal W. Byers, D. D. Murphy & Son, and Herrick, Sloan & Langdon, for appellant.

MITCHELL, J.—The scene of the accident involved in this case was in the north residential district of the town of Strawberry Point on highway No. 13, which at this point runs north and south and is known in the town as Elkader Street. The highway is 30 feet wide and is paved. On the evening of February 7, 1940, about the hour of 6:15 p. m. W. A. Luse, accompanied by two of his sons, Sylvan, eight years old, and Kenneth, five and one-half years old, drove north on highway 13 to the last house on the street, turned around and drove back in a southerly direction on the same highway. It was dark and the lights of the Luse car were burning. Mr. Luse stopped his car on the west side of the highway, headed south about opposite the driveway into the home of another son of his who was married. Just after he stopped, Kenneth got out on the west side of the Luse car, went around the back of the automobile and ran east across the pavement. Leonard Nickoley was a schoolteacher in Strawberry Point. Accompanied by the Misses Thompson, Berg and Hayes, also teachers, he was starting from Strawberry Point to Monona to attend a basketball game. He was driving a 1937 Dictator model Studebaker. He drove north

on highway No. 13 and in a manner which will be hereafter described, the right front fender of his car hit Kenneth Luse and shortly thereafter the boy died from the injuries received in the accident. W. A. Luse was appointed administrator of his son's estate and commenced this action at law for damages. There was a trial to a jury. At the close of the plaintiff's evidence and again at the close of all the evidence the defendant made a motion for a directed verdict, which was overruled, the case submitted to a jury, which returned a verdict for the plaintiff. The defendant being dissatisfied, has appealed. It is first contended by the appellant that the trial court erred in overruling grounds 1, 3 and 4 of his motion for directed verdict and by reference included in the motion made at the close of all the evidence, which grounds are as follows. We quote:

"1. Plaintiff has wholly failed to prove any negligence, if any, on the part of the defendant which was the proximate cause of the accident and the resulting injuries and death of plaintiff's decedent. * * *

"3. The affirmative and undisputed evidence in this record shows conclusively and as a matter of law that the proximate cause of the accident and the death of plaintiff's decedent was the act of the child in suddenly running from a place of concealment into the path of the defendant's car.

"4. There is a total absence of proof in the record that any negligence, if there was any, on the part of the defendant was the proximate cause of the accident and, on the contrary, the evidence shows affirmatively under the repeated decisions of the Iowa Court that any negligence, if there was any, on the part of the defendant was not the proximate cause of the accident in that it appears affirmatively that this accident happened when the plaintiff's decedent ran from a place of concealment and from a place where he wasn't visible to the defendant directly into the path of the defendant's car at a time when it was impossible for the defendant to avoid the accident by the exercise of ordinary care.'

The appellant contends that the trial court erred in overruling the motion for directed verdict because there was he says no proof of any negligence on his part which was the

proximate cause of the accident. We turn to the record to ascertain the facts. As usual in automobile cases, there is a conflict in the evidence but as the error alleged is the failure to direct a verdict, we must consider the evidence in the most favorable light for the appellee. There is testimony from which the jury could have found that W. A. Luse parked his car on the west side of Elkader Street headed south about a foot from the west curb. That overhanging the center of Elkader Street and six feet north to the rear of where the Luse car was parked was a street light. That this light is about 13 feet over or above the center of the street and was burning at the time of the accident. Mr. Luse was driving a 1929 Essex sedan, which was 14 feet 4 inches in length and 5 feet 4 inches in width. That Elkader Street is paved and 30 feet wide. That the Nickoley car, a 1937 Studebaker, was traveling north. That its left side was 3 feet east of the center line of the pavement. That it was about 5½ to 6 feet wide. That Kenneth Luse got out of the rear seat of his father's automobile, on the right side, and went around behind the Luse car, across the street to the point where he was hit. That due to the street light, he was visible from the time he left the rear of his father's car until he was hit. That there was evidence, although much of it is denied, from which the jury could have found that it was 8 feet from the left side of the Luse car to the center of the pavement. That the appellant's car was being driven 3 feet east of the center line of the pavement. That as the decedent was hit by the right front fender of the Studebaker car, he traveled a distance of about 5 feet directly in front of the appellant's car. That the point of impact was to the rear of the Luse car on the east side of the street, well within the lighted portion of the street, and that decedent as he crossed the street could have been seen by the appellant for a distance of approximately 16 feet. Now as to the speed of the Nickoley car. There is direct testimony that it was traveling between 50 and 60 miles per hour. The appellant testified he was traveling between 20 and 25 miles an hour. That he did not see the boy until he reached a point about even with the front end of the Luse car which was headed south. That he applied his brakes. There is evidence in the record of skid marks made by the appellant's car that started

from a point about even with the front end of the Luse car and extended north along the pavement for a distance of between 90 and 93 feet. Nickoley testified that after he applied his brakes the car traveled about 35 to 40 feet. That he did not apply the brakes with great force as he thought the boy might be on his bumper and that a sudden applying of the brakes would cause the car to skid.

The accident happened in a residential district. Code section 5023.01 makes it unlawful to drive at a speed in excess of 25 miles per hour. There is evidence that the car was being driven at an excessive rate of speed but that alone would not permit recovery unless it appeared that the excessive speed was the proximate cause of the injury. In the case of Crutchley v. Bruce, 214 Iowa 731, 734, 240 N. W. 238, 239, this court said:

"Appellant testified that as he approached the place of the accident he was driving 'around forty-five to fifty miles per hour.' The important question at this point is whether or not the speed of appellant's car was the proximate cause of the injury to appellee's intestate.

"We had a similar question before us in Pettijohn v. Weede, 209 Iowa 902, and in McDowell v. Interstate Oil Company, 208 Iowa 641, wherein we held that even though the automobile which caused the injury was being driven at an excessive or unlawful speed, this would not justify recovery unless it appeared that such excessive speed was the proximate cause of the injury. Even though the driver of an automobile may violate the law in some particular, still this cannot be made the basis of recovery by an injured party unless the illegal act was in some way the proximate cause of the injury. For example, a driver might not have his car properly equipped with brakes in good order, as required by the statute, but still, unless such failure was in some way the proximate cause of an injury, it could not be made the basis of recovery. As bearing on the question of excessive speed not being a ground of recovery when not shown to be the proximate cause of the injury, see Silberstein v. Showell, Fryer & Co., 109 Atl. 701 (Pa.) ; McAvoy v. Kromer, 120 Atl. 762 (Pa.) ; Bowman v. Stouman, 141 Atl. 41, 292 Pa. 293; Havermale v. Houck, 89 Atl. 314 (Md.) ; Moran v. Smith, 95 Atl. 272 (Me.) ; Sorsby v. Benninghoven, 161 Pac.

251 (Ore.); Winter v. Van Blarcom, 167 S. W. 498 (Mo.); Burlie v. Stephens, 193 Pac. 684 (Wash.). In the instant case, the accident would have happened just as readily had appellant been driving his car at a much less rate of speed and well within the statutory limit. It was not the speed of appellant's car that was the proximate cause of the injury to the boy.''

The jury could have found from the evidence that the skid marks commenced at the front end of the Luse car. That at that point he applied his brakes so tightly that his wheels were skidding. That he therefore must have seen the Luse child somewhere to the south of where his skid marks commenced in order to have had time to react to the child's presence in the roadway and to apply his brakes.

That there was introduced in evidence, without objection, what is known as Exhibit 6, a chart showing the distance required for stopping an automobile, which was prepared by the Iowa State Highway Commission. It shows that traveling at the rate of 50 miles per hour, an automobile covers 74 feet in a second. That the ''thinking distance'' for applying the brakes on a car traveling 50 miles per hour is 55 feet. That the ''braking distance'' is 111 feet and that the total ''braking and thinking distance'' is 166 feet so the jury could have found that as the speed of appellant's car was 50 miles per hour, that Nickoley could have seen the decedent at least 55 feet south of the front end of the Luse car since at that speed it would have taken him 55 feet to have reacted to the child's presence in the highway and to have applied his brakes. This would be about 70 feet from the point of impact since the decedent was struck to the rear and across the street from the Luse car, which was 14 feet 4 inches in length. So the jury could have found the appellant saw the decedent about 70 feet away and that due to the excessive speed that he was traveling, he could not bring his car to a stop before hitting the boy while if he had been traveling at 25 miles an hour, the legal rate of speed in this residential district, the ''thinking and braking distance'' is only 40 feet and he would have been therefore able to have stopped his car. In Riddle v. Frankl, 215 Iowa 1083, 1087, 247 N. W. 493, 495, this court said:

"While it is suggested by counsel in argument that no negligence on the part of appellants that was the proximate cause of the injury is shown in the record, the contrary must be held. The presence of appellants' automobile at the point of the accident is not excused by the driver and the speed was in excess of that permitted by law. It is argued that the speed had nothing to do with the accident. Perhaps, upon a somewhat refined theory of the evidence, this is correct; but the jury might properly have found that but for the speed appellee would not have been struck, as he was crossing the street and near the south side thereof."

There is evidence from which the jury could have found that the appellant was driving at the rate of between 50 and 60 miles per hour. The lawful rate of speed was 25 miles per hour. The decedent was hit by the right front fender of the appellant's car. Another step or two and the boy would have been in the clear. At 25 miles an hour, the jury could have found, he would have had time for another step or two. In the case of Cameron v. Miller, 43 S. Dak. 429, 433, 180 N. W. 71, 72, the South Dakota court said:

"Defendant contends that there was no evidence to support the claim that the speed of the automobile was the proximate cause of the collision, and that because of this lack of evidence a verdict should have been directed. He argues that, so far as the evidence tends to show, this collision was just as likely to have occurred if he had been driving his car at a much less rate of speed—that the excess of speed was in no way responsible for the accident. While, of course, it is true that plaintiff, if he had chanced to have been running the bicycle slower, or had chanced to have started a little later on the errand upon which he was engaged, might have reached the place of collision at the same instant when defendant's car would have reached same providing such car had been running at some lesser rate of speed, yet, in considering such possibilities, we enter into the field of mere conjecture. It is a fact, which the jury, under the evidence, were warranted in finding, that plaintiff, observing the approaching automobile, was of the opinion that he had ample time to cross in front thereof. Plaintiff had a right to

266

rely on the assumption that defendant was traveling at a speed within the limit fixed by the ordinance (20 R. C. L. 118), unless the unlawful speed of the automobile was apparent to and realized by him. It does not appear that plaintiff did realize the speed at which the auto was traveling, and, if the auto had been traveling even three miles an hour less than it was in fact traveling (no matter what its actual speed was), it is beyond all question that the distance that would have been traveled by the auto, from the time plaintiff started to make the turn across the street until the time of the collision, would have been enough less than the distance actually traveled by said auto to have permitted of the bicycle passing the point of the collision before the auto reached such point. It follows, therefore, that there was evidence from which the jury was warranted in finding, not only that the defendant was guilty of negligence in driving his auto at an excessive speed, but that such negligence was the proximate cause of the collision."

■ Under this record the lower court was right in overruling the motion to direct. It is contended that the court erred in giving to the jury paragraph 13 of the instructions, which is as follows:

"You are instructed that the driver of a motor vehicle on the highway is not under any duty to anticipate that a child which is not in plain view will suddenly and unexpectedly run from a place of concealment into the path of the driver's car, but he should at all times keep a lookout for what may happen on the highway ahead of him."

Appellant relies on the case of Fry v. Smith, 217 Iowa 1295, 1299, 253 N. W. 147, 149. However, a comparison of the instruction given in that case and this shows that they are not similar. In the Fry case, the lower court instructed the jury:

" 'He is bound, however, to keep a constant lookout and use all his senses to avoid the danger of a collision with a pedestrian or vehicle on the highway that might reasonably be anticipated by an ordinarily cautious and prudent person.' "

There is a distinct difference between an instruction which tells the jury that a driver is bound to keep a constant lookout

and use all his senses and one which tells the jury that the driver of a car should at all times keep a lookout for what may happen on the highway. While we do not fully approve of the language used in this instruction, we do not feel it would justify a reversal under the circumstances and facts as shown in this record.

It is next contended that the court erred in giving to the jury paragraph 14 of the instructions, which is as follows:

"You are instructed if you find from the evidence in this case that plaintiff decedent, Kenneth Luse, suddenly and unexpectedly ran from the rear of his father's car which was parked on the west side of the pavement and across the pavement and in front of the defendant's car at a time when the defendant was so close that the defendant could not in the exercise of ordinary care avoid the collision, then and in that event you are instructed that any negligence on the part of the defendant was not the proximate cause of the accident and your verdict should be for the defendant, unless you find, by a preponderance of the evidence before you, that defendant was driving at an excessive, unlawful rate of speed for the district in which he was driving and that such unlawful speed was the proximate cause of the injuries to Kenneth Luse, and that such accident would have been avoided if he had been driving at a lawful speed for that district."

It is the latter part of the instruction to which the objection is made. There is no rule of law in this state which holds that speed cannot be the proximate cause of an accident. In the case at bar, it was negligence per se to be driving in excess of 25 miles per hour. The instruction given simply told the jury that if the defendant was driving at an unlawful rate of speed and that if they further found that this speed was the proximate cause of the injuries to the decedent, they should hold for the plaintiff. We think this was a correct instruction.

It is argued that speed had nothing to do with the accident. Perhaps upon a somewhat refined theory of the evidence, that is correct but the jury might properly have found but for the speed, decedent would not have been struck as he was crossing the street and near the east side thereof. It seems to us the

jury could not possibly have been misled by the instructions. They were told to hold for the defendant if they found that the decedent suddenly and unexpectedly ran from the rear of his father's car at a time when defendant could not, in the exercise of ordinary care, have avoided the collision, and that his negligence in such event would not be the proximate cause of the accident. Had the jury from the evidence found such to be the case, they would have had no need to go farther, and the latter part of the instruction, which told them in effect that if they found said defendant to have been traveling at an unlawful rate of speed and that such unlawful rate of speed was the proximate cause of the accident, they were to find for the plaintiff, could have had no effect upon their finding, let alone have confused or misled them.

Several other errors are urged, all of which have been given consideration, but after careful review of the record we are convinced that the case was fairly tried and submitted to the jury upon proper instructions and that it necessarily follows that the case must be and it is affirmed.—Affirmed.

GARFIELD, HALE, OLIVER, SAGER, and BLISS, JJ., concur.