HERBERT CHRISTENSEN, by Evelyn Christensen, Mother and next friend, appellant, v. VERNON SHELDON et al., appellees.

No. 48432.

(Reported in 63 N. W.2d 892)

April 7, 1954.

Jones, Cambridge & Carl, of Atlantic, and Dale D. Levis, of Audubon, for appellant.

Mallonee & Mallonee, of Audubon, for appellees Vernon Sheldon and Francis Wittrock.

Harper, Gleysteen & Nelson, of Sioux City, for appellee Robert Weir Ironside.

Clark D. Mantz, of Audubon, and Peterson, Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellees Raymond McCuen and Harry Williamson.

OLIVER, J.—The collision occurred shortly after 10 a. m., February 29, 1952, several miles north of Audubon, on U. S.

Highway 71, upon the slopes of two hills, over which the highway runs north and south without turns. The paved slab of the highway is there eighteen feet wide. From the south the highway slopes down from the break or crest of a hill to the foot of that hill, then immediately up a hill to the north. From crest to crest the distance traveled is thirty-one hundred feet. Witnesses testified the weather was raw and damp, with snow flurries and some melting. The pavement was covered with wet, slushy snow and was icy and slick. Three motor vehicles were involved, none of which was equipped with tire chains.

Plaintiff, Herbert Christensen, then age thirteen years, pleaded he was riding as a guest in a Willys pickup (jeep) operated by defendant McCuen and owned by defendant Williamson. This jeep was traveling north on the highway. A tractor-trailer unit operated by defendant Sheldon and owned by defendant Wittrock was proceeding in front of the jeep. The jeep started to pass the tractor-trailer unit. In the course of this maneuver the two vehicles bumped or sideswiped and the jeep went out of control, skidded along the pavement for some distance, and collided with a Packard automobile, owned and operated by defendant Ironside, which was traveling south on the highway. The jeep was almost demolished and plaintiff was seriously injured. He brought this action for damages against the operators and owners of the three motor vehicles, alleging his injuries were caused by the negligent operation of the trailer-truck unit by Sheldon, and of the Packard by Ironside, and the reckless operation of the jeep by McCuen.

The case was tried to a jury. After the evidence for plaintiff had been completed, the defendant operator and owner of each motor vehicle moved for a directed verdict. The court sustained the motion of defendant Ironside, who owned and operated the Packard, and the motion of defendants McCuen and Williamson, the operator and owner of the jeep pickup. The motion for directed verdict of defendants Sheldon and Wittrock, the operator and owner of the tractor-trailer unit, was overruled, but the court sustained their alternative motion to take from the consideration of the jury two of the specifications of negligence pleaded against Sheldon. Trial to the jury

resulted in a verdict for defendants Sheldon and Wittrock. Plaintiff has appealed from the judgment for all the defendants.

I. Plaintiff predicates error upon the order withdrawing from the consideration of the jury two pleaded specifications of negligence against Sheldon based upon excessive speed of the tractor-trailer unit. This unit with its load weighed about twenty-five tons. It was almost forty-five feet long. The tractor had six wheels, two on the front for steering and four duals called the drivers. There was another wheel at the connection between the tractor and trailer and four on the trailer. There were air brakes on the tractor and brakes on the trailer. All the brakes could be operated by the foot pedal and the trailer brakes alone could be operated by a hand lever.

Plaintiff testified the northbound jeep in which he was riding had overtaken the tractor-trailer unit, and traveled behind it to the break on the crest of the south hill. There McCuen sounded the horn of the jeep, pulled into the left lane and started to pass the tractor-trailer unit. Both vehicles were then traveling at about thirty miles per hour. As they proceeded north down the hill the speed of both increased. For some distance the two vehicles traveled side by side. The speed of the jeep was fifty or fifty-five miles per hour. The speed of the tractor-trailer unit was about fifty miles per hour. When they had gone about halfway down the hill the pickup jeep started to turn back into the right-hand lane. The cab of the jeep was then ahead of the tractor. At about that time the southbound Packard of defendant Ironside came over the crest of the hill to the north. When the jeep turned into the right lane its right side came into glancing contact with the left front part of the tractor. Plaintiff testified he felt a bump on the back of the jeep. The jeep went out of control and slid along the highway a considerable distance, down the slope of the south hill and up the slope of the north hill. It first skidded northwest to the left side of the pavement, then northeast to and upon the right shoulder, and then northwest across the pavement to the left, where it was struck on its right side by the Packard. Plaintiff testified that when the jeep slid back to the right he observed the speed of the oncoming Packard traveling down the north hill was about seventy miles per hour. Plaintiff was sitting between

his father (who was killed in the collision) and defendant Mc-Cuen. Plaintiff had dropped down under the dashboard before the collision with the Packard and did not see the collision.

Defendant Sheldon admitted the speed of the tractor-trailer unit was greater on the down slope (where the jeep was attempting to pass) than it had been. He testified he did not hear the passing signal; he was traveling at about forty miles per hour and was not quite halfway down the south hill when he first saw the jeep beside him; the cab of the jeep was then even with the cab of the tractor; he applied the trailer brakes but not the tractor brakes, his vehicle slowed down a little, the jeep crowded him over to the shoulder, bumped the left front fender of his tractor and jarred the tractor over; his speed was then about forty miles per hour; after the bump he continued down the hill with his right wheels on the shoulder; his trailer brakes were "on", his tractor brakes were not applied because he thought that would cause his unit to "jackknife", the jeep was weaving back and forth ahead of his vehicle; he saw the Packard strike the jeep; his vehicle was then thirty feet to the south; his vehicle struck and clipped off about six guardrails on the right, jackknifed and stopped on the south slope of the north hill, north of the wreckage of the jeep which was a few feet north of the Packard.

Tracks along the highway indicated the wheels of the tractor-trailer unit skidded to a stop. Sheldon estimated the point where the jeep and the Packard collided was about five hundred feet north of the place where the jeep bumped the fender of his tractor. Counsel for plaintiff contend the record shows this distance was about nine hundred feet.

Plaintiff pleaded the highway was snow-packed and slippery. He pleaded Sheldon was negligent:

(1) and (2). In increasing the speed of the tractor-trailer unit while it was being passed by the pickup. (Section 321.299 Code of Iowa, 1950.)

"(3). In driving his said tractor-trailer unit upon said highway at a speed and in such a manner as to endanger or be likely to endanger person or property.

"(4). In driving his said tractor-trailer unit upon said highway at a speed in excess of 50 m. p. h.

"(5). In failing to have his tractor-trailer unit under control at the time and place and under the circumstances existing at the time of the collision."

The order here in question withdrew from the consideration of the jury specifications of negligence 3 and 4 above set out.

Specification No. 4 was based upon section 321.286, Code of Iowa, 1950, which makes it unlawful to drive a freight-carrying vehicle with a gross weight of over five thousand pounds, equipped with pneumatic tires, at a speed exceeding fifty miles per hour. Plaintiff himself testified the speed of the tractor-trailer unit was about fifty miles per hour. His counsel contend the physical facts would warrant a finding of speed in excess of the fifty miles statutory limit. Hawkins v. Burton, 225 Iowa 707, 712, 281 N.W. 342. They argue that after its collision with the jeep, the tractor-trailer unit could not be stopped until it had traveled nine hundred and forty-two feet, in the course of which it broke off guardrail posts, loosened guard cables and jackknifed.

This argument overlooks certain important circumstances. The tractor-trailer unit with its load weighed fifty thousand pounds. At fifty miles per hour its momentum would be very great. It was traveling upon a slippery highway. The conditions were such that defendant Sheldon could not safely apply all his brakes because the heavily loaded trailer would cause the unit to "jackknife." With reference to the trailer brakes which he did apply he testified, "I pulled the lever down just part way." Under the conditions we conclude the circumstances relied upon as tending to prove the tractor-trailer unit was driven at a speed in excess of fifty miles per hour were insufficient to warrant submission of that question to the jury.

The condition of the highway and traffic must be taken into account also in considering specification No. 3, which charged dangerous speed and manner of operation of the tractor-trailer unit. Code section 321.285 provides, in part, a person shall drive a motor vehicle at a careful and prudent speed, etc., having due regard to the traffic, surface and width of the highway and of any other conditions then existing. The pleadings

here were sufficient to make that statute applicable. Danner v. Cooper, 215 Iowa 1354, 1366, 1367, 246 N.W. 223. Obviously, the maximum speed permitted by other statutes is not prudent under all conditions. Richards v. Begenstos, 237 Iowa 398, 408, 21 N.W.2d 23, 28, and citations. Here there was evidence defendant's heavy tractor-trailer unit was driven down the hill on a slippery pavement, at fifty miles per hour, the maximum speed permitted by statute, for a considerable distance alongside the jeep which was attempting to pass it, and with an automobile approaching from the opposite direction. Whether, under the circumstances, this speed and manner of operation were negligent was clearly a question of fact.

Defendants Sheldon and Wittrock contend the record is insufficient to show that such negligence, if any, was a proximate cause of the accident in which plaintiff was injured. They cite Burwell v. Siddens, 238 Iowa 645, 649, 25 N.W.2d 864, 866, and other decisions for the rule that an unlawful or negligent act of another cannot be made the basis of recovery by an injured person unless the act is in some way the proximate cause of the injury. That doctrine is well established and was properly applicable under the circumstances shown in the Burwell case. These defendants cite also McDowell v. Interstate Oil Co., 208 Iowa 641, 224 N.W. 58, 225 N.W. 855, a case involving the striking of a boy by a truck traveling upon an icy street. They rely upon the following statements in that decision, as reported in 224 N.W. 58, 60, 61:

"After carefully studying the entire record, we are constrained to hold that violation of the statute and ordinance in this respect [excessive speed] did not cause the child's death. "* * *.

"Plainly the proximate cause of Joe Robert McDowell's death was the icy street", etc.

The language quoted was not a correct application of the above mentioned rule of proximate cause. The court recognized it was unsound and upon rehearing withdrew it. See supplemental opinion, 225 N.W. 855. It does not appear in the Iowa Reports. Moreover, there was also an appeal from the second trial of that case. McDowell v. Interstate Oil Co., 212 Iowa 1314,

1317, 237 N.W. 456, 458. Some of the statements in that decision can hardly be reconciled with language used in the decision in the first appeal. The last opinion refers to the grounds of negligence submitted to the jury, among which were, failure to control the truck, operation at an excessive and dangerous speed, operating at a speed in violation of city ordinance, etc. It states: "Each of the foregoing grounds of negligence has support in the record * * *."

In considering the causal relation necessary to responsibility for negligence, each case must be determined by a practical consideration of its own facts under proper rules. See Swaim v. Chicago, R. I. & P. R. Co., 187 Iowa 466, 470, 475, 174 N.W. 384. The general rules are set out in Restatement of the Law, Torts, sections 430 to 435.

However, in several motor-vehicle-collision cases this court has stated the question of proximate cause is ordinarily for the jury. Coon v. Rieke, 232 Iowa 859, 864, 865, 6 N.W.2d 309; Albert v. Maher Brothers Transfer Co., 215 Iowa 197, 207, 243 N.W. 561; Pazen v. Des Moines Transportation Co., 223 Iowa 23, 28, 29, 272 N.W. 126, 130.

We have already held the question of negligent speed was one of fact. We are satisfied the record here was sufficient to warrant also a finding by the jury that the tractor-trailer unit and the jeep would not have bumped but for the excessive and negligent speed of the tractor-trailer unit. The jury could have found such negligent speed caused the two vehicles to come into contact as the jeep turned into the right side of the road and this would not have happened had such speed been reduced prior to such time. Argazzi v. Reynolds, 106 Conn. 281, 137 A. 857. It may be noted the jury was instructed in substance if it found defendant Sheldon was negligent as alleged and but for such negligence plaintiff would not have been injured (in the collision with the Packard), it would be warranted in concluding such negligence was the proximate cause of such injuries. See Judd v. Rudolph, 207 Iowa 113, 222 N.W. 416, 62 A. L. R. 1174.

Rainey v. Riese, 219 Iowa 164, 166, 257 N.W. 346, 347, states: "In instructing the jury upon the duty resting upon the

defendant driver, the court told the jury that any person driving an automobile upon a highway is required to drive it at a rate of speed that is reasonable and proper having due regard to the traffic upon the highway. Nothing was said by the court in this instruction concerning the duty of the defendant driver to take into consideration the surface and width of the highway and any other conditions then, existing, imposed by Code, section 5029. [Now section 321.285, Code of 1950.] In view of the specific allegations of the petition that the defendant driver was operating the car at a reckless rate of speed and was driving it over a wet and slippery road so that it could not be stopped and was not under control, the substance of such allegations should have been included in the statement of the issues and the duties of the defendant driver, in such respects, should have been stated."

See also Jarvis v. Stone, 216 Iowa 27, 32, 33, 247 N.W. 393; Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 33, 34, 55 N.W.2d 528, 530, 531.

In the case at bar the court withdrew from the jury the entire specification of negligence and gave no instruction under the first portion of section 321.285. Nor was the pleaded and proven slippery condition of the surface of the highway referred to in the instructions. Defendants Sheldon and Wittrock do not contend the withdrawn specification of negligence No. 3 was in substance included in some other specification of negligence submitted to the jury. Nor do we find its submission would have resulted in duplication. That the withdrawal of this specification was prejudicial to plaintiff is evidenced, among other things, by the omission from the instructions of reference to the condition of the surface of the highway and other conditions then existing.

It is our conclusion the withdrawal of specification No. 3 was erroneous and requires a reversal of the judgment rendered for defendants Sheldon and Wittrock.

II. After the completion of the evidence for plaintiff the court directed a verdict for defendants McCuen and Williamson on the ground the evidence was insufficient to show the accident was caused by the reckless operation of the jeep in which plaintiff was riding as a guest. Plaintiff assigns error to that order.

684

■  Section 321.494, Code of Iowa, 1950, provides the owner or operator of a motor vehicle shall not be liable for damages to a guest unless the damage is caused by the driver being under the influence of intoxicating liquor or because of the reckless operation by him of the motor vehicle. The term reckless operation has been construed to mean the conduct of the operator must be more than negligent and must be such as to manifest a heedless disregard for, or indifference to, the rights of others. It implies no care, coupled with a heedless disregard for consequences. Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54; Fraser v. Brannigan, 228 Iowa 572, 293 N.W. 50; Roberts v. Koons, 230 Iowa 92, 97, 296 N.W. 811.

Plaintiff was the only eyewitness who had testified before the verdict was directed. Reference to his testimony has already been made. He testified the jeep had already overtaken and passed another tractor-trailer unit before it came up to the tractor-trailer unit operated by Sheldon. No attempt was made to pass this unit until the jeep reached a break near the crest of the hill from where the highway ahead for more than one-half mile was visible. No approaching traffic was in sight. The speed of the tractor-trailer unit was then about thirty miles per hour. McCuen sounded the horn and turned the jeep into the left lane. As the jeep was passing it, the speed of the tractor-trailer unit increased to about fifty miles per hour and the speed of the jeep to about fifty-five miles per hour. When the jeep was about halfway down the hill and the cab of the jeep was ahead of the truck, the jeep started to turn back into the right lane. At about that time the Packard came over the crest of the opposite hill. As the jeep was turning into the right lane a bump occurred and the jeep went out of control, skidded back and forth along the pavement for some distance and came into collision with the approaching Packard at the left side or edge of the pavement.

■  It is clear McCuen was not reckless in starting to pass the relatively slow moving tractor-trailer unit. He had given an audible signal of his intention to pass. He had the right to assume, until he knew or should have known otherwise, that the operator of the tractor-trailer unit would obey the law,

including the provision of Code section 321.299 that the driver of an overtaken vehicle "shall not increase the speed of his vehicle until completely passed by the overtaking vehicle." Plaintiff testified the speed of the tractor-trailer unit was substantially increased as the jeep was attempting to pass it.

There was evidence which would have supported a finding McCuen's operation of the jeep was contrary to the provision of Code section 321.299 that he "shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." Perhaps there was evidence of other negligence. However, there was no substantial showing his operation of the jeep manifested a heedless disregard for, or indifference to, the rights of others or a disregard for consequences. Hence, there was nothing upon which a finding of reckless operation properly could have been based.

III. Error is assigned to the order, made at the conclusion of the evidence for plaintiff, directing a verdict in favor of defendant Ironside. At that time the evidence relative to this phase of the case was meager. Plaintiff testified he saw the Packard twice before he was injured. He saw it break over the north hill when the jeep was about halfway down the south hill and had started to turn back into the right lane, in front of the tractor-trailer unit. He was unable to estimate the speed of the Packard at that time. He saw it the second time, for an instant, when the jeep slid from the left to the right side of the pavement after the bump. He testified the speed of the Packard was then about seventy miles per hour and it was then about at County Road D. This road intersects the highway approximately six hundred feet north of the foot of the north hill. The jeep was then on the lower part of the north slope of the south hill. At about that time plaintiff dropped down under the dashboard and remained there. He testified the jeep eventually slid back into the left lane again and the collision occurred after that. He did not know at what speed the jeep was moving when the Packard collided with it.

After the collision the Packard stood facing south on the west shoulder of the highway, except for its left wheels, which were on the west edge of the pavement. Tracks behind it indicated it traveled a short distance in this position with its right

side close to the guard posts along the outside edge of the shoulder. The wrecked jeep lay a few feet north of the Packard. The place of the collision was on the north hill, about one hundred and ninety feet north of its foot. A witness for plaintiff testified defendant Ironside stated, "it was a wreck that he couldn't avoid; he couldn't stop."

The only specification of negligence of defendant Ironside, argued in plaintiff's brief, was the failure of said defendant to use reasonable care to avoid the collision with the jeep after he knew of the perilous position and situation of the jeep and plaintiff. To recapitulate, there was evidence indicating the Packard at the time of the collision was partly off the pavement and was as far to the right as the guard posts would permit, that defendant Ironside stated he "couldn't avoid" the wreck and "couldn't stop", that the jeep was moving at the time of the collision, plaintiff did not know how fast, and that after the collision it lay north of the Packard. Aside from the foregoing, there was nothing tending to show the manner in which the Packard was operated during the critical period while it traveled the distance of about four hundred feet from County Road D to the place of the collision. It is clear there was no substantial evidence to support the specification of negligence of defendant Ironside.

IV. Plaintiff contends the interests of justice require the reversal of the case as to all defendants, in the event of a reversal as to any of them. It is stated the entire cause of action arises out of one transaction and is based upon alleged concurrent negligence and recklessness. Among decisions cited are: Larimer v. Platte, 243 Iowa 1167, 53 N.W.2d 262, and citations; In re Estate of Ring, 237 Iowa 953, 22 N.W.2d 777; Keller v. Gartin, 220 Iowa 78, 261 N.W. 776. In these cases judgments for or against the same party or parties were reversed in whole for errors affecting only portions thereof. Although these decisions did not involve the reversal of judgments as to other parties for errors for or against some parties, most authorities agree this may be done in proper cases.

The cumulative supplement in 3 Am. Jur., Appeal and Error, section 1186, discusses the application of this rule in

actions against several tort-feasors. It has been applied for the benefit of plaintiffs as well as defendants. See Tedeschi v. Silver Rod-Paterson, Inc., 15 N. J. Super. 322, 83 A.2d 341.

5 C. J. S. 1420, Appeal and Error, section 1919, states the general rule is where "the cause of action is of such a nature that the rights and issues are interdependent and injustice might result from a reversal as to less than all the parties, the appellate court will reverse the judgment as to all; but where the error does not affect the parties jointly, and the rights and interests of the parties are several and independent, so that a proper decision of the case as to one is not dependent on the judgment as to the others, the judgment may be reversed as to one and affirmed as to the others."

In the case at bar it does not appear the affirmance of the judgment for McCuen, Williamson and Ironside will work an injustice to plaintiff in further proceedings against Sheldon and Wittrock. Nor has any other valid reason been presented for a reversal as to all defendants. Hence, the reversal will be limited to the judgment for defendants Sheldon and Wittrock.

V. After motions for directed verdicts for defendants Ironside, McCuen and Williamson were sustained, and said defendants were discharged, Mr. Ironside was a witness for Sheldon. He testified to various details of the accident including the movements of all the three motor vehicles involved. Defendant Sheldon also testified to these matters. Plaintiff contends the record, with the additional evidence introduced on behalf of defendants Sheldon and Wittrock, was sufficient to require the submission to the jury of the case against Ironside. In reviewing orders directing verdicts this court may not consider evidence against a defendant introduced after that defendant had been discharged. Hence, such additional evidence was not considered against defendants Ironside, McCuen and Williamson.

The text in 53 Am. Jur. 315, Trial, section 391, states: "Great caution should be exercised by a trial court before directing a separate verdict for one of several codefendants, and it ought never to be granted unless it clearly appears that there is no evidence to affect the party in whose favor it is made."

This language appears in Capital Traction Co. v. Vawter, 37 App. Cas. (D. C.) 29, Ann. Cas. 1912D, 1059, with an annotation at pages 1061 and 1062.

The question arose more frequently at a time when parties to the record were not competent as witnesses and it was a common practice to join persons as defendants to prevent their testifying. The general rule was, where there was no evidence against one of the defendants he was entitled to his discharge at the close of plaintiff's case so he might testify. The rule was, however, that to justify his discharge then, the want of evidence against him must be so glaring and obvious as to afford strong grounds for the belief he had been made a defendant arbitrarily, to prevent his testimony.

In that connection Castle v. Bullard, 23 How. (U. S.) 172, 185, 16 L. Ed. 424, 428, states:

"But Lord Denman held, in Sowell v. Champion, 6 Ad. & Ell., 415, that the application to a judge in the course of a cause, to direct a verdict for one or more defendants in trespass, is addressed to his discretion, and that the discretion was to be regulated, not merely by the fact that, at the close of the plaintiff's case, no evidence appears to affect them, but by the probabilities whether any such will arise before the whole evidence in the cause closes. There is, says the learned judge, so palpable a failure of justice, where the evidence for the defense discloses a case against a defendant already prematurely acquitted, that such acquittal ought never to take place until there is the strongest reason to believe that such a consequence cannot follow.

"* * *.

"Whatever diversities of decision there may be upon this point, all agree that the application ought not to be granted, unless it appear that there is no evidence to affect the party in whose favor it is made. Brown v. Howard, 14 Johns., 122."

This doctrine was followed in Bates v. Miller, 2 Cir., N. Y., 133 F.2d 645, 647, 648, which states: "* * * the showing of negligence as to [defendant] Rupp was meager;" until the other defendants presented their evidence. The discretion, as to direct-

ing a verdict "should be regulated not merely by a lack of evidence at the close of plaintiff's case, but by the probabilities whether such evidence will arise before the whole evidence is in; there would be 'so palpable a failure of justice' ", etc.

Many able trial courts in this state, in practice, do not sustain motions for directed verdict before the completion of all the evidence, except in obvious cases. We approve that procedure. However, rule 216, Rules of Civil Procedure, permits motions for directed verdict by a defendant after the plaintiff has completed his evidence. That seems to have been the rule in this state from the beginning. It is applicable to part or all of the defendants. The procedure of the distinguished trial court in directing the verdicts after plaintiff completed his evidence was permissible under R. C. P. 216 and was not erroneous.

The judgments for defendants Ironside, McCuen and Williamson are affirmed, the judgment for defendants Sheldon and Wittrock is reversed.

The costs for printing the briefs of defendant Ironside and defendants McCuen and Williamson and one third of the costs for printing the record are ordered taxed to plaintiff. Other costs upon appeal are ordered taxed to defendants Sheldon and Wittrock.—Affirmed in part, reversed in part.

All JUSTICES concur.