STANDARD OIL COMPANY, Appellee, v. L. H. MARVILL et al., Appellants.

**JUDGMENT: Default—Setting Aside—Oral Agreements.** Oral agreements between litigants or their attorneys when not brought to the attention of the court are entitled to little favor on hearings to set aside default judgments.

1

**JUDGMENT: Default—Setting Aside—Discretion of Court.** Ordinarily, the appellate court will not interfere with the action of the trial court in refusing to set aside a default.

2

**MUNICIPAL CORPORATIONS: Public Improvements—Bonds—Scope.** A bond conditioned to pay all subcontractors for "materials" furnished, embraces "fuel" when the statute under which the bond is given defines "materials" as including "fuel."

3

Headnote 1: 34 C. J. p. 286. Headnote 2: 4 C. J. p. 840. Headnote 3: 29 C. J. p. 613.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

### NOVEMBER 24, 1925.

### REHEARING DENIED MARCH 12, 1926.

FROM a ruling on a motion to set aside default and judgment the defendant United States Fidelity & Guaranty Company appeals.—*Affirmed.*

*Miller, Kelly, Shuttleworth & McManus,* for appellants.

*Nourse & Nourse,* for appellee.

DE GRAFF, J.—I. The trial court denied the motion of the defendant United States Fidelity & Guaranty Company to set aside a default and judgment entered against it in favor of the plaintiff. The ruling is the provocation for this appeal. No other question is presented. These are the facts:

An action at law was instituted by plaintiff, to recover $1,978.69 for oil, gasoline, and lubricants furnished to the defendant L. H. Marvill, who was under contract with the board of supervisors of Carroll County, Iowa, to haul and spread gravel on Section A of Federal Aid Project No. 154, Carroll County, Iowa. The United States Fidelity & Guaranty Company signed, as surety, a bond to secure the performance of said contract in conformity to the conditions prescribed by Section 1, Chapter 347, Acts of the Thirty-eighth General Assembly.

The verified petition alleged the making of the contract, the execution of the bond, the furnishing of material to the contractor, the failure of the contractor to pay, and that a claim had been filed with the auditor of Carroll County by the plaintiff. To the petition there were attached an itemized statement of account and a copy of the surety bond.

The petition was filed November 23, 1923, for the January, 1924, term of court. A default judgment was entered June 16, 1924, which was at the close of the third, or

May, term of court following the commencement of the action. At the same term of court, the defendant company filed its motion to set aside the default, together with an affidavit of merit, and also filed its answer, denying liability.

The motion to set aside the default and judgment is predicated on an alleged oral agreement between the agent of the defendant surety and the attorney for the plaintiff. The material recital therein is denied by plaintiff. Mr. White (defendant's agent), in his affidavit stated:

1. JUDGMENT: default: setting aside: oral agreements.

"Mr. Nourse told me that he would not take any default and judgment against the United States Fidelity & Guaranty Company without notifying us, and it was not necessary for us to take any action in the matter until we heard from him."

Mr. Nourse (plaintiff's attorney) in his affidavit said:

"He [White] said that the defendant company had expected to have the claim settled before that time, and he believed that it would soon be settled. Upon that statement, I told him we would not take any default for the January, 1924, term, without notifying him, and hoped that the claim would be settled by that time. Nothing was said about any other or further terms of court or notices or extensions of time."

The motion and the resistance filed thereto presented a direct conflict, and the trial court was compelled to rule. It was upon the defendant to establish a satisfactory excuse for his default, as he was duly and legally noticed into court. His only excuse is based on an alleged understanding which he had with plaintiff's attorney.

An agreement of this character, orally made, and not communicated to the court, is entitled to little favor. *Dixon v. Brophey,* 29 Iowa 460. Furthermore, the trial court was privileged to take into consideration the provisions of statute which permit an attorney to bind his client to any agreement in respect to any proceeding within the scope of his proper duties and powers, but with this limitation:

"No evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the

records of the court." Section 10922, Paragraph 2, Code of 1924. ·

An appellate court, under the circumstances of this case, does not ordinarily interfere with the finding of the trial court. It is only in exceptional cases that this court will consent to sit in judgment "upon the comparative veracity of counsel in matters which might easily have been removed from the possibility of doubt by making them of record or reducing them to writing." *Ronayne v. Hawkeye Com. Men's Assn.*, 162 Iowa 615.

We are not disposed to disturb the finding for the further reason that a large discretion is reposed in the trial court. True, we recognize a stronger presumption in favor of the correctness 2. JUDGMENT: de- of the trial court in setting aside a default than fault: setting in overruling a motion of this character. *McMil-* aside: discre- tion of court. *lan v. Osterson*, 191 Iowa 983. The finding of the trial court in the instant case was the determination of a fact question under conflicting evidence, and it stands as the verdict of a jury. *Mogelberg v. Clevinger*, 93 Iowa 736; *Byrnes v. American Mut. F. Ins. Co.*, 114 Iowa 738.

It may be said further that there was no admissible evidence of the agreement, other than that contained in the affidavit of defendant's attorney. However, there are other considerations. The claim of the plaintiff had been left standing unpaid for several months. The company had given a bond for the payment of this claim. The work for which plaintiff furnished the materials had been completed, and the statute of limitations was about to find operation. In fact, the action had been commenced within a few days of the period fixed by the statute. The defendant's agent was so informed, and stated to plaintiff's attorney, at the time of the alleged conversation, that he "guessed" that the commencement of the action was all that plaintiff could do. He further assured the plaintiff that the defendant company had expected to settle the claim before that time, and believed it would soon be settled.

Under the facts and circumstances disclosed, the sworn statement of the plaintiff's attorney is the more reasonable and believable.

II.   We now turn to the defense as pleaded by the defend-

ant surety in its answer. It is therein alleged that, under the terms of the bond executed by the surety to secure the perform-

3. MUNICIPAL COR-
PORATIONS: pub-
lic improve-
ments: bonds:
scope.
ance of the contract, no liability arises to the plaintiff on account of the goods, wares, and merchandise which the plaintiff claims to have furnished to the contractor, and that "said claim is not secured by said bond."

It is true that the obligation of the contractor was not enhanced by the giving of the statutory bond. The liability of the contractor is fixed by the statute, which provides:

"* * * which bond shall run to said body, board, committee, or other public representative, for its use and benefit and for the use and benefit of all persons, firms and corporations who shall perform any labor or furnish any material, including fuel, in the carrying out of such public contract." Section 1, Chapter 347, Acts of the Thirty-eighth General Assembly.

The bond in suit specifies the condition of the obligation to be:

"If the principal shall faithfully perform the contract on his part and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure to do so, and shall fully reimburse and repay the owner all outlays and expenses which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal or subcontractors for labors or materials, then this obligation shall be null and void."

It is apparent, therefore, that the provision of the bond upon which the claim of the plaintiff is based, is the promise of the contractor to pay all persons supplying him with labor and materials for the prosecution of the work provided in the contract.

The statute specifically provides that claims and demands incurred by the principal in the prosecution of the work shall embrace any labor or "any material, including fuel."

Whatever conflict there exists in the decisions of our sister states is traceable to the interpretation given to the words "materials used or furnished," and whether such materials or supplies constitute an essential part of the construction, or whether

the purpose of their use enters primarily into the construction of the improvement. For example, it is said in *Pierce Oil Corp. v. Parker* (Ark.), 271 S. W. 24:

"On the other hand, coal and oil, while used as fuel for portable engines and machinery used in construction work, are merely an incident in the operation of the machinery, and partake of the same characteristic as it does. In other words, they are at least one step further removed from the actual work of the construction, and do not have any immediate connection with the structure at any time. In short, they are used in operating the tools and machinery, which in their turn act upon the structure."

It is said in that case that courts must stop somewhere in the construction of these statutes. This may be accepted; but what is a court to do when the language of the statute expressly includes the material in question, and thereby excludes the idea that it is merely an incident in the operation of the machinery? It will be observed that decisions involving this point must be read in the light of the statutes of the state in which the case was decided.

This class of liens is purely statutory, and in the absence of a provision making the thing in question lienable, it may be said that, if the thing is only remotely connected with the construction of the public improvement, then no lien exists.

The protection of the bond covers the class intended to be made lienable by the statute. It may not be said, under the terms of the statute of Iowa, that there is no lien for anything beyond that which entered into or became a part of the improvement contemplated by the statute.

The lien statute specifically includes fuel, and it must be presumed that the legislature, in the enactment of this statute, intended to enlarge the application of the earlier statute, and not to limit the lien liability only to materials that are furnished and used in the construction of a public road, in the sense that such material becomes a part of it. The fair intendment of the language used in the statute under consideration is to give a lien to persons who supply fuel-material consumed in the prosecution of the work, as well as to persons who supply materials directly used in such prosecution.

In *Southern Sur. Co. v. Metropolitan Sewerage Com.* (Wis.), 201 N. W. 980, coal was furnished and used as fuel to run boilers which generated steam for the hoist used in excavating ditches for the sewer, and gasoline and lubricating oil were used in operating motor trucks for hauling sand and gravel used in the construction. These items were disallowed, on the theory that the coal so used as fuel was used only to facilitate or make possible the operation of the tools and machinery, which in their turn act upon the structure. It must be borne in mind, however, that the Supreme Court of Wisconsin was construing a statute which did not specifically include fuel as a material in the carrying out of a public contract, and in *Southern Sur. Co. v. Hotchkiss* (Wis.), 201 N. W. 986, it is said, in reference to *Southern Sur. Co. v. Metropolitan Sewerage Com.*, supra:

"With the holding so now made, viz., that the right, so far as the lienability of claims is concerned, is to be tested and determined upon the same standard as similar claims would be under the general Mechanic's Lien Law."

On this theory, the court in the later case denied the claim of the Standard Oil Company for oil and gasoline furnished a subcontractor.

The decisions to which reference has been made and the cited decisions therein contained are not materially helpful in determining the case before us, although the reasoning is not subject to impeachment. It is not controlling, as the statutes under interpretation are essentially different from the statute in the instant case.

Upon the entire record, we are constrained to hold that the trial court ruled correctly. Therefore the judgment entered is—*Affirmed.*

FAVILLE, C. J., and STEVENS, VERMILION, and ALBERT, JJ., concur.