AETNA CASUALTY & SURETY COMPANY OF HARTFORD, CONNECTICUT, Appellee, v. L. O. KIMBALL et al., Appellees; STANDARD OIL COMPANY, Appellant.

NOVEMBER 20, 1928.

*Nourse & Nourse* and *Smith & Feeney*, for appellant.

*Senneff, Bliss, Witwer & Senneff*, for Aetna Casualty & Surety Company of Hartford, Connecticut, appellee.

KINDIG, J.—L. O. Kimball, defendant, on the 20th day of July, 1926, entered into a contract with Floyd County for the construction of Items 2 to 10, inclusive, of a certain road improvement therein, known as Federal Aid Project 279. In compliance with Section 10300 of the 1924 Code, L. O. Kimball, the contractor, furnished the county a bond, which was executed, as surety, by the Aetna Casualty & Surety Company, of Hartford, Connecticut, plaintiff and appellee. On July 20, 1927, the contract was completely performed, and the work accepted by the county.

At that time, there was in the hands of Floyd County a sum of money in excess of $5,000, due L. O. Kimball, the contractor before mentioned. Many subcontractors filed claims with the county auditor for materials and supplies furnished the said L. O. Kimball in connection with the original improvement agreement. Among those so doing was the Standard Oil Company,

defendant and appellant. Accordingly, the appellee commenced this action, as contemplated by Section 10313 of the 1924 Code, which reads:

" * * * the surety on any bond given for the performance of the contract, may, at any time after the expiration of thirty days, and not later than six months, following the completion and final acceptance of said improvement, bring action in equity in the county where the improvement is located to adjudicate all rights to said fund, or to enforce liability on said bond."

The goods and merchandise for which the appellant demanded recovery by cross-petition in the court below are gasoline, $822.88, lubricating oils, greases, and barrels, $996.66, and kerosene, $3.60.

After a trial on those issues, that tribunal declared the $822.88 for the gasoline a proper item to be paid from the said 10 per cent of the public fund. But at the same time, the accounts for oils, greases, kerosene, and barrels were held not suitable for payment therefrom. Hence, appellant argues that there should be a reversal.

It appears that the materials for which appellee is liable are co-extensive with and determined by the definition of the word "material," as contained in Section 10299 of the 1924 Code. As to what goods, wares, and merchandise are included within that statutory term, the parties here disagree.

Appellant's basis for its theory is founded: First, on the changing and steadily liberalizing tendencies of the lawmakers, as evidenced by statutory amendments, to become modern, and consistent with the recognized operation of present-day inventions and machines used in the accomplishment of public improvements; second, on the fact that the relief here sought is not under a mechanic's lien, but rather, a system providing for priority of payment, and because there is no "lien," in the stricter sense of the word, the reason for narrow construction disappears; and third, on the phraseology of Section 10299, supra. While appellee, on the other hand, urges: First, that, even if Chapter 452 of the 1924 Code, containing the statutory provisions herein mentioned, does not give rise to a mechanic's lien, yet it furnishes a priority of payment in many respects similar thereto, and accordingly both have always been construed

1254

alike in this state, so far as strictness is concerned; second, that the statutory amendments before indicated, rather than amounting to a policy of liberality in this regard, are mere limited additions to the former strictly construed statute, and, in turn, must also receive a narrow construction; and third, that the statutory definition contained in Section 10299, supra, implies limitation, rather than expansion.

A solution, then, for the problem presented can most easily be found by first recognizing the limitations, if any, placed upon that word "material" before the enlarging amendments were supplied, and then following this with an analysis of the new legislation's effect thereon.

I. Section 3102 of the 1897 Code, before amended, contained no definition for the word "materials." Throughout the history of the judicial interpretation of that statute, the policy was to construe strictly, rather than liberally. During this process, many times, the right of prior payment given by that legislation was referred to as a remedy akin to the mechanic's lien law of the state. *Empire State Sur. Co. v. City of Des Moines*, 152 Iowa 531; *Standard Oil Co. v. Marvill*, 201 Iowa 614; *Teget v. Polk County Dr. Ditch*, 202 Iowa 747; *Monona County v. O'Connor*, 205 Iowa 1119. *Standard Oil Co. v. Marvill*, supra, aptly says:

"This class of liens [right of priority of payment for material furnished the contractor on public improvements] is purely statutory, and in the absence of a provision making the thing in question lienable, it may be said that, if the thing is only remotely connected with the construction of the public improvement, then no lien exists."

II. Under the legislation contained in Section 3102 of the 1897 Code, supra, "material," by judicial interpretation, is confined to such goods, wares, and merchandise as may be furnished for and intended to enter into and become, directly or indirectly, a part of the completed improvement. *Empire State Sur. Co. v. City of Des Moines*, supra; *Standard Oil Co. v. Marvill*, supra; *Teget v. Polk County Dr. Ditch*, supra; *Monona County v. O'Connor*, supra.

*Monona County v. O'Connor*, supra, expresses the thought in this phraseology:

"As already stated, none of the claims are for material furnished or labor performed upon the improvement, and do not, therefore, come within the provisions of the statute in force and controlling as to claims of the class stated."

To the same effect is the quotation from *Standard Oil Co. v. Marvill*, supra, previously set forth. Before the *O'Connor* case, however, it was decided, in *Teget v. Polk County Dr. Ditch*, supra, in harmony with the above and foregoing doctrine, that:

"Material furnished for the lubrication of, or as fuel for the operation of, the machinery and equipment used in the construction of a drainage improvement * * * does not come within the provisions of the statute."

III. Next in the order of legislative development was the enactment of Section 1, Chapter 347, Acts of the Thirty-eighth General Assembly, wherein "material," for the purposes of the Code, included fuel. Force was given to this change in *Standard Oil Co. v. Marvill*, supra, wherein it is declared:

"The lien statute specifically includes fuel, and it must be presumed that the legislature, in the enactment of this statute, intended to enlarge the application of the earlier statute, and not to limit the lien liability only to materials that are furnished and used in the construction of a public road, in the sense that such material becomes a part of it. The fair intendment of the language used in the statute under consideration is to give a lien to persons who supply fuel-material consumed in the prosecution of the work, as well as to persons who supply materials directly used in such prosecution."

What was said there with respect to the enlarged scope of the statutory provision must, of course, be confined to the one idea there under consideration. That is to say, the purpose of the discussion was to indicate that fuel was there to be added to the previous limited definition of the word "material;" yet nothing was intended or said to the effect that any further extension was to be made, and the word "material" was enlarged in its meaning only so as to admit fuel, which had been formerly excluded.

Thus, as thereby expanded, the word "material" remained

circumscribed and bound in by a strict construction for future purposes.

IV. Succeeding the enactment embodied within Section 3102 of the 1897 Code, supra, as amended by Section 1, Chapter 347, Acts of the Thirty-eighth General Assembly, supra, and the construction thereof, as above indicated, there was passed another amendatory act at the extra session of the fortieth general assembly, known as House File No. 254, which is now embraced within Section 10299 of the 1924 Code, supra. Paragraph 4 thereof contains this suggestion of enlargement over the previous amended statute:

"Material shall, in addition to its ordinary meaning, embrace feed, provisions, and fuel."

V. Covering this entire legislative history, the policy of this court, as well as that of the general assembly, has been in the direction of strict construction, as counter-distinguishing the liberality sought by appellant. No suggestion is made anywhere, either in the judicial opinions or Code enactments, that would intimate any new or different trend. Indication appears everywhere that the legislature, when adopting the amendment now a part of Section 10299, supra, had the intention of adhering to the original definition of "material," enlarged to the extent only of including "feed, provisions, and fuel." So the net result of all the statutory amendments aforesaid is the original meaning of the word "material," plus "feed, provisions, and fuel," but nothing else.

Consequently, when the lawmakers used the following phrase, "in addition to its ordinary meaning," as part of the text of Subdivision 4, Section 10299, supra, they made reference to that understanding of "material" which the courts had given it at that time. "Ordinary meaning," as there utilized, referred to the well established judicial interpretation then, and for a long time past, well understood. Parenthetically, it is here repeated that, in *Teget v. Polk County Dr. Ditch*, supra, we held that "material," as used in the public improvement statute there discussed, did not include oil.

Resultantly, if appellant is to be allowed protection for its lubricating oils, greases, kerosene, and barrels, it must be under and by virtue of the added words "feed, provisions, and fuel."

VI. For the purpose of explanation, it is here stated that the kerosene was used for lighting, while the oils and greases were employed to lubricate pistons, crank shafts, transmissions, and differentials of certain tractors, trucks, vehicles, and other machines. The barrels contained these greases and oils. Then are those goods, wares, and merchandise included within the meaning of the words "feed, provisions, and fuel," under the contemplation of Section 10299, supra? We think not.

"Feed" has a very definite and well understood meaning. Webster's New International Dictionary furnishes this definition:

" * * * That which is eaten; esp., food for beasts; fodder; feeding stuff; pasture; hay; grain, ground or whole; as, *feed* for sheep. * * * A grazing or pasture ground; pasturage; crops. * * * An allowance of provender given to a horse, cow, etc.; a meal; as, a *feed* of corn or oats."

25 Corpus Juris 1011 consistently suggests: "Feed. As a noun, food for cattle." 2 Bouvier's Law Dictionary (3d Rev.) 1200 explains: "This word is used in its ordinary sense, with reference to cattle and hogs."

Manifestly, "feed" has no reference or relation to the goods, wares, and merchandise supplied by appellant.

VII. "Provisions" are likewise foreign to and not included within the items upon which appellant's claim is here based. This word is defined by Webster's International Dictionary thus:

" * * * A store or stock of needed materials prepared beforehand; esp., a stock of food; hence, any kind of eatables collected or stored; food."

3 Bouvier's Law Dictionary (3d Rev.) 2760 adds: "Food for man, victuals." 23 American & English Encyc. of Law (2d Ed.) 291 states: "The ordinary meaning of the word 'provisions' is food, victuals, eatables."

32 Cyc. 742 supplements with this:

"Provisions. Food and provender for men and beasts; food; victuals; fare; provender; food; victuals; eatables; a stock of food; any kind of eatable, collected or stored; a supply of food; that on which one subsists; whatever is fit for the food of families and is usually eaten as food; something in a condition to

be consumed as food, such as meal, flour, lard, meat; and other articles of that kind—articles which need no change but cooking."

Plainly, then, as before suggested, "provisions," as used in the statute under consideration, does not include the lubricants, kerosene, or receptacles delivered to the contractor by appellant.

VIII. Nor does the word "fuel," as embraced within said statute, cover those goods, wares, and merchandise furnished by appellant. Webster's New International Dictionary affords this explanation:

"Any matter used to produce heat by burning, as wood, coal, peat, petroleum, gas; that which feeds fire; combustible matter for fires."

27 Corpus Juris 913 consistently says:

"Fuel. Any matter used to produce heat by burning, as coal, gas, peat, petroleum, or wood."

Such definitions and meanings exclude, rather than include, oils and greases for lubricants, the barrels containing the same, and kerosene consumed for lighting purposes only.

Wherefore, appellant's goods, wares, and merchandise are not within the statutory contemplation of the word "material," and it is not entitled to have its claim therefor established against the appellee.

The decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.