Rainbo Oil Company, Appellee, v. McCarthy Improvement Company et al., Appellants.

No. 40656.

April 10, 1931.

Rehearing Denied September 26, 1931.

L. F. Tierney, of Kenline, Roedell, Hoffman & Tierney, and James E. Remley, for appellee.

Carl H. Lambach, for appellant.

WAGNER, J.—The plaintiff is a corporation engaged in the sale of gasoline, oil and grease, with its principal place of business at Dubuque. It maintains a distributing plant at Anamosa. The defendant, McCarthy Improvement Company, is a corporation engaged in the business of paving public highways. This latter corporation entered into a contract with the Highway Commission for the construction of a paved highway on Primary Road Number 117, in Jones County. The paving to be constructed was to connect the towns of Wyoming and Anamosa. The defendant, Southern Surety Company, executed a statutory bond as surety for the faithful performance of said contract. The defendant-Peacock was a sub-contractor engaged in what is termed "batch hauling." In the prosecution of the work, the dry material was mixed in a batch hopper or apportioning plant at the side of the Railroad track, where unloaded and then hauled from there out onto the highway, where the mixer was working, and there made into wet concrete and laid down as paving. Peacock had a fleet of trucks, six to fourteen in number, and the plaintiff arranged to furnish him gasoline, oil and grease for use in the construction of said highway improvement. According to this arrangement, the plaintiff located at the camp occupied by Peacock and his force, gasoline and oil supply tanks equipped with suitable pumps. In the early summer of 1929, and for the purpose of carrying out its contract, the appellant, McCarthy Improvement Company, set up its outfit on the railroad right of way at Wyoming. Peacock, to carry out his arrangement with the appellant-company, likewise located his camp, including bunk house, boarding house and trucks, on the same railroad right of way, adjoining the camp of the appellant-company. The plaintiff-company furnished Peacock at his camp in Wyoming a 550 gallon gasoline tank, which it caused to be buried in the ground

and fully equipped with pump, etc., the same as found in an ordinary filling station. The plaintiff-company delivered gasoline in the buried tank and also oils and greases in containers to Peacock at the Wyoming plant, for use in the construction of the highway improvement. When approximately half of the paving had been constructed, for its convenience, the paving company moved its outfit from Wyoming to Anamosa and there located it on the right of way of the railroad company on the outskirts of Anamosa. Peacock, likewise, moved his outfit and located his camp on said right of way, adjoining that of the appellant-company. The plaintiff-company removed its gasoline tank from Wyoming and reinstalled the same in the same manner at Peacock's camp at Anamosa, where its products, consisting of gasoline, oil and grease, were delivered in the buried tank and containers in the same manner as had been formerly done at Wyoming. There is no question that the amount claimed for said products thus delivered by the plaintiff-company to Peacock is the reasonable value as claimed by the plaintiff and found by the trial court.

It is conclusively shown by the record, that some of the products thus delivered by the plaintiff to Peacock were not used in "batch hauling," for which Peacock was employed, and were not used in the construction of the improvement; nor is it shown by the record, what portion of the same was used in the construction of the improvement. Some of the gasoline was used in trucks coming from Iowa City and engaged in other work; some was sold by him to people driving touring cars; some was sold to other operators; some was used to fill a bus to drive to Cedar Rapids; some of said materials were used for his own pleasure; some were used by Peacock while driving to get repairs, driving out onto the work and going to Cedar Rapids; some by his drivers in riding around in the evenings after cessation of work. No record was kept by him as to the different uses to which said materials were put.

It is also shown that a considerable quantity of the products thus supplied by the plaintiff-company to Peacock was sold by him to other sub-contractors on orders which the appellant-company gave to said sub-contractors, who, upon receiving the order, purchased the gasoline from Peacock, and these orders were presented by Peacock to the appellant-company and he received

his money for the products sold, and the amount thereof was deducted from the amount due from the contractor to the sub-contractor who received the material from Peacock. It is thus shown that for the amount disposed of by Peacock in this manner, he was not a sub-contractor, but himself became a material-man. It is quite apparent from the record, that a large quantity of the material for which the appellant is asking compensation was not, and could not have been, used in the construction of the improvement.

Over the objection of the appellant, that the testimony is incompetent, irrelevant and immaterial, and that the appellant is not bound by any understanding of the plaintiff, but only bound to pay for material actually used in the construction of the work, the manager and assistant manager of the plaintiff-company in rebuttal testified, in substance, that their understanding was, that the products which were to be supplied by the plaintiff to Peacock were to be used on this McCarthy Improvement Company job for highway Number 117. We will not further dwell upon the facts, as we deem the foregoing sufficient for the determination of the proposition which is before the court. The amount of the fund remaining unpaid to the contractor is more than ample to pay the amount claimed by plaintiff.

The question presented for our determination is, What is the proper construction to be placed upon Section 10305, Code, 1927? The instant case presents the question for the first time to this court. Before the plaintiff can recover, is it incumbent upon it to allege and prove that the gasoline, oil and grease delivered by it to Peacock were used *in* the construction of the highway improvement? Or, when it is shown that a considerable quantity of the same was not used in the construction of the improvement, is it sufficient proof that the gasoline, grease and oil were delivered by it *for* use in the construction of the improvement? Appellee relies upon Neilson, Benton & O'Donnel v. The Iowa Eastern R. Co., 51 Iowa 184; Lee & Jameson v. Hoyt, 101 Iowa 101; The Frudden Lumber Company v. Kinnan, 117 Iowa 93; Page & Son v. Grant, 127 Iowa 249, and other similar cases in which this court has held under the Mechanics' Lien Statute (Now Section 10271, Code, 1927) that all that the materialman needs to prove in order to be entitled to a mechanic's

lien, is that he furnished the material for the designated use, and that the actual use of the material in the construction of the building need not be shown; and argues that the purpose of Section 10305, Code, 1927, and its forerunner, Section 3102, Code, 1897, is to protect laborers, materialmen and sub-contractors, who furnish labor or material for a public improvement, in like manner as they are protected in furnishing labor or material under the Mechanic's Lien Statute, for a structure or building erected by a private owner, and that we should apply, to the section now under consideration, the same rule which we have previously applied to the Mechanic's Lien Statute. Section 10305, Code, 1927, formerly Section 3102, Code, 1897, is not a portion of the mechanics' lien law. See Empire State Surety Company v. City of Des Moines, 152 Iowa 531, at 547. The language of the Mechanics' Lien Statute (Section 10271, Code, 1927) and the statute now under consideration is not identical. The former statute providing for a mechanics' lien is Section 3089, Code, 1897. The language of the statute (now Section 10271, Code, 1927) remains substantially as it was in the Code of 1897. The language of the statute now before the court for construction (Section 10305, Code, 1927), has been materially changed from what it was in the statute as it formerly existed, (Section 3102, Code, 1897). The question for determination is: Has the plaintiff shown that the gasoline, grease and oil constitute material for which, within the purview of the statutory law, it is entitled to recovery from the unpaid portion of the fund? In Aetna Casualty & Surety Company v. Kimball, 206 Iowa 1251, we set out the history of the legislation relative to what constitutes "material," under Chapter 452, Code, 1927. We there said:

"Covering this entire legislative history, the policy of this court, as well as that of the general assembly, has been in the direction of strict construction, as counter-distinguishing the liberality sought by appellant. No suggestion is made anywhere, either in the judicial opinions or Code enactments, that would intimate any new or different trend."

We also said in the cited case:

"Section 3102 of the 1897 Code, before amended, contained

no definition for the word 'materials.' Throughout the history of the judicial interpretation of that statute, the policy was to construe strictly, rather than liberally."

Section 1, Chapter 347, Acts of the 38 G. A., included fuel as material within the meaning of the statutory provision. There was next enacted at the extra session of the 40 G. A. what was known as House File No. 254, an amendatory act, now found in Paragraph 4, Section 10299, Code, 1927, which provides:

" 'Material' shall, in addition to its ordinary meaning, embrace feed, provisions, and fuel."

Chapter 244, Acts of the 43 G. A., amended this paragraph of the Code so that it now reads:

" 'Material' shall, in addition to its ordinary meaning, embrace feed, gasoline, kerosene, lubricating oils and greases, provisions, and fuel."

This last amendment was enacted after the decision of this court in Aetna Casualty & Surety Company v. Kimball, 206 Iowa 1251. It will be noted from the foregoing, that the legislature in 1924 enlarged upon the ordinary meaning of the word "material" as construed by this court in its former decisions, so as to include feed, provisions and fuel. The same legislature made a significant change in the original statute, now under consideration. Said original enactment, Section 3102, Code, 1897, provides:

"Every mechanic, laborer or other person who, as subcontractor, shall perform labor upon or furnish materials *for* the construction of any public building, bridge or other improvement," etc. (Writer's Italics).

At the same special session, when the legislature enlarged the ordinary meaning of the word "material," they changed the statutory law then found in Section 3102, Code, 1897. This statute is now found in Section 10305, Code, 1927, and provides:

"Any person, firm, or corporation who has, under a contract with the principal contractor or with subcontractors, performed labor, or furnished material, service, or transportation,

*in* the construction of a public improvement,'' etc. (Writer's Italics)

It will be noted, that the language of Section 3102 before amended was quite similar to the language in the mechanics' lien statute hereinbefore referred to. We need not consider what would have been our holding if Section 3102, Code, 1897, had not been changed as it now appears in Section 10305, Code, 1927. It is significant that the legislature changed the language of the statute so as to require the furnishing of material ''*in* the construction of a public improvement'' instead of furnishing material ''*for* the construction of any public building, bridge or other improvement.'' It is also significant that the change was made at the same session of the legislature which enlarged the ordinary meaning of the word ''material.'' In taking the two sections together, it is apparent that it was the legislative intent that a recovery could be had for those things denominated in Section 10299, Code, 1927, as material which, under Section 10305, Code, 1927, were furnished and used ''*in the construction of a public improvement*,'' that is, used in any proper way in connection with the work of constructing the improvement. While gasoline, oils and greases consumed or used by haulers in hauling other material, which actually go into the physical improvement, constitute material ''furnished in the construction of a public improvement,'' the plaintiff has not shown that any definite portion of the gasoline, oils and greases for which claim is made was so used. In Teget v. Polk County Drainage Ditch, 202 Iowa, 747, while not necessary to the result reached, we said:

''Perhaps we should add that the evidence does not show that any definite portion of the merchandise sold to Hamiel & Russell by the Standard Oil Company was used by them in connection with the improvement in question.''

The relief given to one as against the unpaid portion due to a contractor for public improvements is purely statutory in its character and there can be no claim established against the unpaid portion of the fund, except as stated in the statute. The decision of the instant case must be made in the light of the statute as it now exists. As hereinbefore stated, it is conclusively shown that a large quantity of the material for which re-

covery is sought was not used in connection with the work of constructing the improvement. The plaintiff having failed to prove what portion of the same was so used, the court is powerless to aid the plaintiff, because of lack of proof. See DeBolt v. Farmers' Exchange Bank (Okla.), 151 Pac. 686.

The judgment of the trial court as to the appellant is erroneous, and the same is hereby reversed.—Reversed.

FAVILLE, C. J., and EVANS, STEVENS, ALBERT, MORLING, KINDIG, and GRIMM, JJ., concur.