MERGIA HAMPTON, Administratrix, Appellee, v.
CLARENCE BURRELL, Appellant.

No. 46611.

JANUARY 9, 1945.

REHEARING DENIED MARCH 9, 1945.

R. B. Hawkins, of Leon, and Paul W. Steward, of Des Moines, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, all of Osceola, and Hoffman & Carter, of Leon, for appellee.

GARFIELD, J.— ▮ ˙About 6 p. m. on September 14, 1943, decedent came in contact with defendant's truck at the intersection of U. S. Highway 69 and West Street in Davis City (population about five hundred), Decatur county. No. 69, paved to a width of eighteen feet, extends southwest and northeast at this point. About one-fourth block to the south the Chicago, Burlington & Quincy railroad ˙tracks parallel No. 69. West Street, 'which is graveled, runs north and south across the highway and the railroad tracks. It is fifty feet wide but where it intersects the north side of the pavement it widens out in a rounding curve to the east and west.

Decedent, six years and one day old, lived with his parents and two brothers in the third house about a half block north of the intersection on the west side of West Street. Emmit Still, decedent's great uncle, lived at the northwest corner of the intersection. Roy, the decedent, slept with this uncle and there was a strong attachment between the two. Still was a railroad section hand, due home from work about 6 p. m.

Just before the accident Roy and his brother, fourteen months younger, heard the motorcars carrying the section workers, left their home and ran south in West Street to meet their uncle. At or somewhat north of the north edge of the pavement, Roy came in contact with defendant's truck, traveling southwest on No. 69. He received an injury to his head from which he died two days later without regaining consciousness. Roy's mother, as administratrix, brought this action for the damage to his estate. Trial to the court resulted in judgment for $3,250.

I. Upon this appeal defendant contends the evidence of negligence is insufficient; that decedent suddenly darted out from a place of concealment or a place remote from the line of travel and the accident was unavoidable. We think, however, there is sufficient evidence of defendant's negligence. Of course,

it is our duty to view the testimony in the light most favorable to plaintiff. We will briefly review the evidence in such light.

Defendant is a trucker, twenty-six years old, who was thoroughly familiar with this intersection. He knew Roy and his two brothers and frequently saw Roy playing around the Hampton home when he passed there. When defendant got within one-fourth mile of the intersection he could see it. The view of the intersection was not obstructed at any place within that quarter mile.

As defendant approached West Street from the east the section men were returning from their work on a motorcar and trailers traveling east on the railroad. Defendant looked toward the section gang, laughed, and waved at them. Highway 69 does not cross the railroad, so the safe operation of his truck did not require defendant to look toward the railroad. There was no other traffic on No. 69, except a car that followed defendant at a distance of about three hundred feet. Defendant admits he never saw Roy, his brother, or the large dog that was with the boys, until he had driven about two hundred feet beyond the intersection. He then stopped when one of the section men waved and screamed at him. That is the first he knew there had been an accident. Defendant was driving about twenty-five miles per hour. He did not slacken his speed nor change his course.

While there is evidence of weeds and bushes east of West Street, north of the intersection, there is substantial testimony that defendant had an unobstructed view not only of the intersection but of West Street for one hundred fifty feet north of No. 69. The driver of the car that followed defendant's truck, a witness for defendant, said, on cross-examination:

"I saw this little boy coming towards the pavement and I was back 300 or more feet from this intersection at that time. I saw the dog with him * * * and realized there was liable to be a collision. * * * There was nothing that I saw there ahead of the truck driver that would prevent him seeing the child and stopping."

Plaintiff testified there was an unobstructed view of the

intersection and of West Street for one hundred feet to the north from three blocks east on 69. Emmit Still testified:

"At a point six or seven hundred feet east of the place where this little boy was hit he could be seen 150 feet anyhow north of 69 * * *. There would be no place between six or seven hundred feet east of the crossing that he couldn't be seen for 150 feet north of that crossing and all the space in between."

There is testimony that soon after the accident defendant said he was reckless because he was looking over at the section workers and never saw the little boy; that he was not paying attention at the time where he was driving. The inference from this is that the reason defendant did not see decedent is that his attention was needlessly diverted toward the railroad workers— not that his view was obstructed.

Plaintiff testified that when the boys left their home she said, "Don't run out on the pavement." Both plaintiff and Still, who said they saw the fatal accident, testified in effect that the boys did not run fast and were about in the middle of West Street when Roy was injured. There is substantial evidence that: Roy was two to three feet north of the paved portion of 69 when the truck came in contact with him; the outside dual wheel of the truck was on the shoulder north of the pavement; Roy's head was struck by a bolt which projected from the right front corner of the truck box; Roy was not looking back to the north at the time; just before the accident, decedent threw up his hands.

From the foregoing it is apparent the trial court was justified in finding defendant negligent in not keeping a sufficient lookout and not seeing the child. Of course, defendant was bound to exercise reasonable care to maintain a lookout. The duty to look implies the duty to see what is plainly visible. Ege v. Born, 212 Iowa 1138, 1144, 236 N. W. 75. The court was warranted in concluding this little boy was plainly to be seen. That defendant needlessly diverted his attention to the railroad workers does not excuse his failure to observe decedent. Dearinger v. Keller, 219 Iowa 1, 3, 257 N. W. 206, and cases cited; 5 Am. Jur. 599, section 167.

Defendant was under the duty to exercise reasonable care not only in maintaining a lookout but also in operating his truck so that he might avoid striking decedent. Rebmann v. Heesch, 227 Iowa 566, 579, 288 N. W. 695; Pazen v. Des Moines Transp. Co., 223 Iowa 23, 30, 272 N. W. 126. The court was also justified in finding defendant negligent in not operating his truck so that the accident could have been avoided. Defendant testified he could have stopped his truck at the speed he was driving within about fifteen feet. A finding would be proper that the accident would not have occurred if the truck had been turned slightly to the left. Under this record it was a question of fact for the court to decide whether defendant was negligent in not stopping or changing his course.

See, as supporting our conclusion on the sufficiency of the evidence, Paschka v. Carsten, 231 Iowa 1185, 3 N. W. 2d 542; Luse v. Nickoley, 231 Iowa 259, 1 N. W. 2d 205; McMahon v. Rauch, 230 Iowa 674, 298 N. W. 908; Lenth v. Schug, 226 Iowa 1, 281 N. W. 510, 287 N. W. 596; Darr v. Porte, 220 Iowa 751, 263 N. W. 240; Webster v. Luckow, 219 Iowa 1048, 258 N. W. 685.

Since decedent was but six years old it is presumed he was free from contributory negligence. We need not consider whether this presumption is conclusive. See Paschka v. Carsten, supra; Brekke v. Rothermal, 196 Iowa 1288, 1295, 196 N. W. 84; 38 Am. Jur. 888, 890, section 205; annotation 107 A. L. R. 4, 114.

Cases upon which defendant relies do not conflict with our conclusion. They hold that a motorist is not liable for injury to a child who unexpectedly darts out from a concealed place (as, for example, behind a parked car between intersections) into the path of the vehicle, so that injury could not be avoided by the exercise of reasonable care. Among such cases are Mowrey v. Schulz, 230 Iowa 102, 296 N. W. 822; McBride v. Stewart, 227 Iowa 1273, 290 N. W. 700; Chipokas v. Peterson, 219 Iowa 1072, 260 N. W. 37, 113 A. L. R. 524, and annotation 528, 545.

II. Defendant contends there was error in denying him a jury trial. The court ruled there was no demand for a jury trial in accordance with Rule 177(b), Rules of Civil Procedure, therefore such a trial was waived under Rule 177(a), and the

trial should be to the court under Rule 178. The applicable parts of these Rules are:

"177. Demand for Jury Trial.

"(a) Jury trial is waived if not demanded according to this Rule * * *

"(b) A party desiring jury trial of an issue must file a written demand therefor, either by endorsement on his pleading, or within ten days after the last pleading directed to that issue. * * *

"178. To Court or Jury. All issues shall be tried to the Court except those for which a jury is demanded."

No written demand for a jury trial was filed by endorsement on any pleading or otherwise and the Rules were not strictly complied with. Defendant contends, however, he did make a timely demand for a jury and that plaintiff's counsel waived his right to have the case tried to the court and is estopped to object to a jury trial.

The petition and answer were filed in November 1943. On February 16, 1944, plaintiff filed an amendment to her petition, which amplified some of the specifications of negligence in the original petition and stated that certain expense totaling $141.50 had been incurred for a doctor, a hospital, and an undertaker. The case came on for trial on March 1, 1944. The jury panel was present and the judge had assumed there would be a jury trial. He stated that he assumed a proper demand for such trial under the Rules had been made. When the court asked plaintiff's counsel if he was ready to proceed with the trial, counsel stated there had been no demand for a jury and under Rule 177 the trial should be to the court.

Defendant's counsel then orally moved the court to permit a jury trial because: Rule 177 had been in effect only eight months and defendant was surprised by a strict application of the Rule; the Rules were unconstitutional and void because not enacted by the legislature; both parties recognized that the case was in the jury assignment, and the jury panel was present, ready to try the case. Plaintiff's counsel then stated that he denied the case was in any jury assignment by plaintiff's con-

sent or ·conduct; denied that plaintiff had done anything to waive Rule 177, or to give defendant any right to a jury trial, but that she had insisted all the time the case was not one for the jury because no proper demand for a jury had been made. The motion of defendant's counsel and statement of plaintiff's counsel were taken down by the court reporter as part of his report of the trial. The court then made the ruling denying a jury trial. Trial to the court was had and most of the evidence was taken that same day.

Soon after the trial started, defendant's counsel inquired of opposing counsel if he had an amendment on file and stated he had not been served with a copy of it. Apparently the judge then removed from the court files the copy of the amendment to the petition and handed it to defendant's counsel. When court convened the next morning, after most of the evidence had been taken, defendant's counsel dictated into the record: "Let the record show that the original answer * * * be adopted as the answer to the Amendment to the Petition, with the same force and effect as to the original petition." Plaintiff's counsel stated, "That is all right with us." Attached to defendant's motion for new trial is an affidavit of each of defendant's counsel that the clerk never mailed or delivered to him the copy of the amendment as provided by Rule 82 of Rules of Civil Procedure and that he had no knowledge of the amendment before the trial was in progress. (Rule 82 in this respect does not greatly differ from section 11125, Code, 1939, previously in effect.)

The motion for new trial, supported by affidavit of one of defendant's counsel, also states that: On January 24, 1944, at the commencement of the January term, the case was assigned for trial to a jury on February 9, 1944, "by mutual request, agreement and acquiescence" of "one of plaintiff's counsel" and affiant, who were present in court; the court reporter, under the court's direction, then prepared an assignment of cases for jury trial, copies of which were available to attorneys, showing the case as fifth on the list; the case was continued to February 23d by agreement of counsel, and again to March 1st at the request of plaintiff's counsel because of illness of one of plaintiff's counsel; the case was the only one assigned for March 1st and the jury panel was recalled for the purpose of trying the case.

There was a written resistance to the motion for new trial, supported by affidavits of plaintiff and each of her attorneys, Martha Hoffman of Hoffman & Carter, who brought the suit originally, O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker. A transcript of record appearances certified by the clerk of the lower court, which has been filed with us, states that Mr. Carter, the other member of the firm of Hoffman & Carter, at the time of trial was in the service of the United States and was not present. This resistance denies the above statements in the motion for new trial regarding the assignment of the case, states that neither plaintiff nor any of her attorneys asked for a jury trial, did anything to agree to one or acquiesced in the calling of any jury or putting the case in such an assignment, and denies that the case was in the jury assignment or that they agreed to such an assignment.

Unless we are to ignore Rules 177 and 178 the denial of a jury trial does not entitle defendant to a reversal. The Rules preserve the right of jury trial in all cases in which it previously existed but provide that such a trial is waived if not demanded according to Rule 177. Incidentally, a statute in force from the Revision of 1860 until the Rules took effect provided that a jury trial could be waived. Section 11519, Code, 1939. See Vaux v. Hensal, 224 Iowa 1055, 1058, 277 N. W. 718; Shores Co. v. Iowa Chemical Co., 222 Iowa 347, 268 N. W. 581, 106 A. L. R. 198.

Under Rule 177, if either party desired a jury trial of the issues raised by the petition and answer he was required to file a written demand therefor, either by endorsement on his petition or answer or within ten days after the answer was filed. The answer was the last pleading directed to those issues. Waldo Theatre Corp. v. Dondis, D. C., Maine, 1 F. R. D. 685, 687. No demand of any kind for a jury was made within that time. Defendant has offered no excuse for his failure to make such demand. It is not even shown that defendant's attorneys were not aware of the requirements of the Rule. The failure to make such demand operated as a waiver of a jury trial on the issues raised by the petition and answer. Rule 177(a); Waldo Theatre Corp. v. Dondis, supra; Munkacsy v. Warner Bros. Pictures, D. C., N. Y., 2 F. R. D. 380.

It is doubtful if the amendment to plaintiff's petition stated any new issue unless it was the allegation that decedent incurred medical and hospital expense of $91.50 and burial expense of $50. The most that can be claimed in this action on this $50 item is interest thereon during the time decedent probably would have lived. Davidson v. Vast, 233 Iowa 534, 543, 10 N. W. 2d 12, 17, and cases cited. The right of the estate rather than the father to recover for these items of expense is at best questionable. See section 10986, Code, 1939; Carnego v. Crescent Coal Co., 164 Iowa 552, 554, 146 N. W. 38, Ann. Cas. 1916D, 794. The amendment did not change the prayer of the petition.

But, assuming the amendment stated some new issue not found in the petition, either party could file a written demand for a jury trial on that issue by endorsement on the amendment or within ten days after the last pleading directed to that issue. Waldo Theatre Corp. v. Dondis, supra, D. C., Maine, 1 F. R. D. 685, 687; Lader v. Dahlberg, D. C., N. Y., 2 F. R. D. 49, 50; Mealy v. Fidelity Nat. Bk., D. C., N. Y., 2 F. R. D. 339; Munkacsy v. Warner Bros. Pictures, supra, D. C., N. Y., 2 F. R. D. 380. See, as bearing on this question, In re Estate of Hermence, 235 Iowa 745, 748, 15 N. W. 2d 905, 907. But neither party demanded a jury trial of any new issue raised by the amendment and defendant never indicated that he desired a jury trial of anything except the main issues raised by the petition and answer.

Defendant argues to us that the filing of the amendment on February 16th revived the time for demanding a jury trial on all issues in the case and that such time had not expired at the commencement of the trial because defendant had not answered the amendment. No such contention was made in the court below prior to the filing of defendant's motion for new trial, eight days after the trial, although not later than soon after the trial commenced defendant knew of the unanswered amendment. But the argument cannot be sustained in any event. See authorities last above; also, Holtzoff, New Federal Procedure and the Courts, 109. To adopt defendant's contention would mean that a party could at any time demand a jury trial of all issues in the case by the simple expedient of filing an amendment to his pleading

and making such demand within ten days after the last pleading directed to the amendment.

But, defendant argues, plaintiff's counsel agreed that the case be assigned for trial to a jury and thereby waived Rules 177 and 178. As stated, an affidavit of one of defendant's counsel attached to the motion for new trial supports defendant's claim in this regard. Such a claim cannot be established in this manner.

Rule 245 provides that a motion for new trial, if based on ground (b), (c), or (g) of Rule 244, may be sustained and controverted by affidavits. Grounds (b) and (g) are clearly not involved here. Ground (c) of Rule 244 is, "Accident or surprise which ordinary prudence could not have guarded against." At best, it is doubtful that the claim asserted falls within this ground. Only the three grounds of a motion for new trial, now stated in Rule 244(b), (c), and (g), may be sustained by affidavit. Feister v. Kent, 92 Iowa 1, 9, 60 N. W. 493. Rules 244 and 245, insofar as applicable here, introduce nothing new but are identical in spirit and almost in letter with like provisions of sections 11550 (paragraphs 2, 3, and 7) and 11551, Code, 1939, previously in effect since the Revision of 1860.

Even if defendant's claim regarding the assignment of the case was one of "accident or surprise which ordinary prudence could not have guarded against," and if we were to disregard Code section 10922, which we will later mention, we would not be justified in finding that the case was assigned for jury trial "by mutual request, agreement and acquiescence" of counsel for both parties as alleged by defendant. This claim was vigorously denied by plaintiff's counsel and such denial was supported by affidavits. No proof was offered to sustain defendant's allegations other than the affidavit attached to his motion. The trial court, which had more knowledge concerning the assignment than we have, found against defendant on his claim. We have repeatedly held that where conflicting affidavits are presented in connection with a motion for new trial, the lower court is in a much better position to determine the facts than we are and we will not interfere. Hoegh v. See, 215 Iowa 733, 736, 737, 246 N. W. 787; Spaulding v. Laybourn, 164 Iowa 277, 283, 145 N. W. 521; State v. McClure, 159 Iowa 351, 354, 140 N. W. 203,

and cases cited; State v. Steen, 125 Iowa 307, 313, 101 N. W. 96. See, also, State v. Davis (Hale, C. J.), 230 Iowa 309, 312, 297 N. W. 274, 275; 39 Am. Jur. 196, 197, section 198.

"It is only in exceptional cases that this court will consent to sit in judgment 'upon the comparative veracity of counsel in matters which might easily have been removed from the possibility of doubt by making them of record or reducing them to writing.' Ronayne v. Hawkeye Com. Men's Assn., 162 Iowa 615 [144 N. W. 319]." Standard Oil Co. v. Marvill, 201 Iowa 614, 617, 206 N. W. 37, 39.

Furthermore, we have held time and again that such an agreement as defendant contends plaintiff's counsel made regarding the assignment and continuance of the case cannot be established by affidavit of opposing counsel. This is the effect of section 10922, Code, 1939, in force in almost identical language since the Code of 1851, which reads:

"Authority. An attorney and counselor has power to * * *
"2. Bind his client to any agreement, in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or any entry thereof upon the records of the court."

We have uniformly construed this statute, which is not superseded by the Rules of Civil Procedure, to prohibit proof by affidavit of opposing counsel of an attorney's agreement regarding a matter of procedure. Loter v. Metropolitan L. Ins. Co. (Miller, J.), 229 Iowa 1127, 1130, 1131, 296 N. W. 227, 229, and numerous cases cited; Standard Oil Co. v. Marvill, supra, 201 Iowa 614, 616, 206 N. W. 37; Whitlock v. Wade, 117 Iowa 153, 156, 90 N. W. 587; Sapp & Lyman v. Aiken, Underwood & Co., 68 Iowa 699, 701, 28 N. W. 24. We have so held even where no showing was made counter to the affidavit. Searles v. Lux, 86 Iowa 61, 66, 52 N. W. 327, 328, from which we quote with approval in Loter v. Metropolitan L. Ins. Co., supra.

Defendant also argues that the court in its discretion could .

have granted a jury trial even though his demand was not timely and even though plaintiff did not waive Rules 177 and 178, and that there was an abuse of discretion here. Without determining whether a jury trial may not be had under certain circumstances, even though no demand is made for it according to Rule 177, we are not inclined to sustain this contention here. The Rules contain no provision similar to Federal Rule 39 (b) that "notwithstanding the failure of a party to demand a jury * * * the court in its discretion upon motion may order a trial by a jury of any or all issues." 8 Federal Code Ann., App., 727. We are asked to read such a provision into Rules 177 and 178, heretofore quoted so far as applicable here.

Aside from the above, defendant made no demand for a jury prior to the time trial was about to start. In making that demand, his counsel observed, "I assume the court would have to find that I was too late." It was not then contended there had not been a total failure to comply with the Rules in making the demand. As stated, the contention now made that the demand was timely because of the filing of the unanswered amendment was not suggested below until the motion for new trial was filed, although defendant knew of the amendment soon after the trial commenced. A finding of abuse of discretion in denying a jury trial because of the manner in which the case was assigned for trial is not justified upon the showing made.

III. Defendant argues that the trial judge erred in making an inspection of the scene of the accident, because no rule or statute authorized it and the parties did not consent thereto, and that he also erred in considering information thus obtained as evidence.

On the second morning of the trial the court announced that it had visited the scene of the accident the day before and revisited it that morning when it made a thorough examination of the surroundings; that it did this to be able to better apply the testimony. Defendant's failure, during the progress of the trial, to object to what the court had done might well be held to amount to consent. See, as bearing on this question, 64 C. J. 109, section 112; State v. Christiansen, 231 Iowa 525, 527, 1 N. W. 2d 623, 624, and case cited; Brenton State Bk. v. Heckmann, 233 Iowa 682, 685, 7 N. W. 2d 813, 815, and citations.

Rule 194 authorizes the court, when it deems proper, to direct the jury to view any real or personal property or any place where any material fact occurred. Section 11496, Code, 1939, which the Rule supersedes, ·contained a similar provision except that it made no mention of personal property. Code section 11581 states that the provisions of chapter 496 (including section 11496) relative to juries are intended to be applied to the court when acting as a jury on the trial, so far as they are applicable and not incompatible with other provisions in the chapter. However, the Rules seem to contain no provision similar to Code section 11581. We think, however, even in the absence of rule or statute the trial court had the inherent right to view the scene of this accident to enable it to better apply the testimony, if it deemed it proper to do so. Mason v. Braught, 33 S. D. 559, 146 N. W. 687, 690, and cases cited; 64 C. J. 1200, 1201, section 1005.

The trial judge had no right to consider his observations at the scene as evidence nor to base the judgment thereon. But the record fails to show that the judge so considered his observations at the scene or that the judgment is not based on the evidence. Where it is claimed jurors are guilty of misconduct in making an unauthorized view of the scene, prejudice will not be presumed but must affirmatively appear. Johnson v. Des Moines City Ry. Co., 201 Iowa 1044, 1049, 207 N. W. 984. The same rule should apply here.—Affirmed.

OLIVER, BLISS, WENNERSTRUM, and SMITH, JJ., concur.

MANTZ, J., and HALE, C. J., and MILLER and MULRONEY, JJ., dissent from Division. II.

MANTZ, J. (dissenting)—I desire to respectfully dissent as to Division II of the majority opinion. I agree with the majority that there was a fact question for determination as to the negligence of the appellant, but disagree with their conclusion that the court, under the record, had a right to pass upon that question to the exclusion of the jury. The holding of the majority in that respect, in my judgment, misconstrues the record and the proper application of the new Rules of Civil Procedure.

I. As I read the opinion of the majority it simply adds up to a holding that appellant deprived himself of the right to insist upon a jury trial by failing to observe the provisions of Rule 177. It seems to me that when there is taken into consideration the entire record, the majority opinion confirms an action of the lower court which had the effect of depriving appellant of a certain valuable right. When we come to interpret the new Rules it is well to keep in mind their history and background. We can start out with the proposition that the object of the law as enforced by court procedure is to do justice. There had grown up complaints as to old rules, that they were working in an opposite direction. Delays, procrastinations, uncertainties, and technicalities were said to be working hardships and injustices. To avoid such was the moving force behind the creating of the new Rules. We can ill afford at this time to apply the new Rules in such a manner as to indicate a return to the conditions complained of.

In order to pass upon this controversy upon its merits it seems to me that it is not necessary to indulge in any refined reasoning. Certainly the new Rules did not contemplate anything of such a nature. The simple claim of the appellant is that a misconstruction of the Rules by the court deprived him of a right which is guaranteed, and this in the face of a showing that he sought at all times to avail himself of that right. The net result is that he is penalized by the failure of others to perform an official duty.

The court held that appellant had barred his right to a jury trial by failing to comply with Rule 177, one of the new Rules of Civil Procedure, effective July 4, 1943. These Rules were created pursuant to chapter 311, Acts of the Forty-ninth General Assembly. Among the purposes stated in such act, as expressed in the title, were, "* * * the purpose of simplifying the same and of promoting the speedy determination of litigation on its merits." In its report to the legislature on January 28, 1943, by this court, these objects and purposes were again set forth.

Rule 177 relates to trial by jury in civil cases. It supersedes sections 11429 and 11519, Code of 1939, both relating to the right of trial by jury. It is as follows:

"Demand for Jury Trial.

"(a) Jury trial is waived if not demanded according to this Rule; but a demand once filed may not be withdrawn without consent of all parties not in default.

"(b) A party desiring jury trial of an issue must file a written demand therefor, either by endorsement on his pleading, or within ten days after the last pleading directed to that issue.

"(c) Unless limited to a specific issue, every such demand shall be deemed to include all issues triable to a jury. If a limited demand is filed, any other party may, within ten days thereafter or such shorter time as the Court may order, file his demand for a jury trial of some or all other issues."

Here it will be noted that the new Rule (177) is an abrupt and radical departure from the statutory procedure preceding it. Under the old procedure, a litigant, in a proper case, had an absolute right to a jury trial unless he waived that right in the manner defined by statute. Under the new Rule it is claimed that he is not entitled to a trial by jury unless he takes affirmative action as set forth in Rule 177. In construing this new Rule, certainly we should take into consideration the former statutes and rules of procedure. Here it is claimed that appellant did not follow the Rule (177) and consequently cannot complain. Appellee argues that by so doing the appellant waived his right.

II. Turning to the record in this case we find that Hoffman and Carter, attorneys, of Leon, Iowa, acting on behalf of appellee, on November 3, 1943, filed a petition asking for damages on account of negligence of the appellant. On November 15, 1943, appellant filed an answer controverting the allegations of the petition. The case then stood fully at issue until February 16, 1944, when appellee filed an amendment to her petition. Neither party had demanded a jury trial before the trial began on March 1, 1944. The amendment of February 16th coincided with the appearance in the case of Slaymaker, Killmar, and Slaymaker, on behalf of appellee. The amendment had the effect of changing and enlarging the issues in the case. This amendment, so far as appellant was concerned, did not come to his attention until March 1, 1944, when O. M. Slaymaker was examining a witness.

The record shows without dispute that the copy filed with the amendment had never been given to the attorney for appellant, as provided in Rule 82. Rule 82 is as follows:

"Filing, Copies, Delivery. All motions and pleadings, with copy, shall be filed with the clerk, except that no copy of the petition need be filed if a copy was attached to the original notice served upon each defendant. Sufficient additional copies of all motions and pleadings shall be filed to afford a copy for each adverse party appearing, but if more than one such party appear by the same counsel, only one copy need be filed for such parties. It shall be the duty of the pleader to file the required copies with the original if he then knows of the appearances; otherwise, immediately upon receipt of notice thereof to be given by the clerk. The copies shall be mailed or delivered forthwith by the clerk to the attorney of record for the adverse party or parties, if appearance is by attorney; otherwise to the parties."

Appellant did not have notice of the amendment of February 16th. This stands uncontradicted. So far as he was concerned, it would be held to have been filed on March 1, 1944, and, in that case, he would be entitled to have applied Rule 85(d); also Rule 88. This last-cited Rule (88) relates to the filing of amendments. Included in the Rule is the provision that the court may allow such "which do not substantially change the claim or defense."

Appellee did not seek or obtain from the court permission to file the amendment of February 16th. An examination of the amendment filed on February 16, 1944, readily shows that it did substantially change the claim of appellee.

It seems to me that the record amply supports appellant's claim that when the trial of the case began on March 1, 1944, the same was not at issue and that the court erred in not granting the demand of appellant for a jury trial. Prior to February 16, 1944, the case stood at issue and ready for trial. Otherwise, it would not have been placed in the assignment on January 24, 1944. It so remained until February 16, 1944, when the Slaymaker firm came into the case. This amendment and copy were left with the clerk as provided by the Rules. The very Rule

upon which the court acted gave the appellant the right for which he was contending.

The action brought was based upon certain claimed negligent acts on the part of the appellant. These claimed acts were set forth in the petition of appellee. The amendment filed on February 16, 1944, begins with the statement, "that she [appellee] *adds to the grounds of negligence charged* against the defendant [appellant] the following." The amendment had three paragraphs. Paragraph 1 is subdivided into four parts; the other two are each in a single paragraph. The first two parts of paragraph 1 are as follows:

"(a) That the defendant when operating his truck at the time and place that he ran into the decedent, and for sometime prior thereto, failed to have the same under control and did not reduce the speed to a reasonable and proper rate, all as required by Code Section 5023.04.

"(b) That the place where decedent was injured was on a crossing or intersection of public highways, and when the defendant was approaching and traversing said crossing or intersection of said public highways he did not have his truck under control and did not reduce the speed to a reasonable and proper one, all as required by Code Section 5023.04."

Paragraph 2 sets out an entirely new and separate claim for damages, such as medical expense, hospital bill, and expense of burial.

It seems to me that the amendment in no sense was intended as an elaboration of the allegations of the petition, but had for its purpose to set forth two separate and distinct claims. I do not understand that either the court or appellee contended otherwise. The petition made no reference to such items of damages or to any claim of negligence that appellant had failed to comply with the provisions of section 5023.04 in approaching intersections.

When we consider that the boy was struck and killed at the intersection of the side road with the main highway it can readily be seen that the amendment raised a new, separate, and distinct charge of negligence. The petition contained no allega-

tion whatever upon the issue raised. The items of damage are entirely new.

The record shows that the amendment was not called to the attention of the appellant until during the examination of appellee, at which time certain questions were asked her about the items claimed in the amendment. We set out the record:

"[Mr. Hawkins] Mr. Slaymaker, do you have an Amendment on file in this case? [Mr. Slaymaker] You will find it there. [Mr. Hawkins] I haven't been served with a copy of it. [Mr. Slaymaker] It was filed. I think you may take the witness. [The Court] *Here is the copy in these files.*"

In view of the nature of the amendment I do not think that the case was at issue on March 1, 1944. On March 2, 1944, following the discovery of the amendment, Attorney Hawkins stated that he wished to dictate an answer thereto into the record. Mr. Slaymaker suggested, and the court approved, the adoption of the original answer to the amendment. It is needless to say that at that time the appellant could have filed a separate pleading to the amendment. He could likewise have moved to strike the same or to require it to be more specific, or as being filed too late and after the case had been assigned. The appellee made no objection to the answer to the amendment; in fact, Mr. Slaymaker suggested it. Under Rule 177(b) a party pleading could endorse a demand for a jury on any pleading. No time for such endorsement is stated in the Rule. Also he can make such demand within ten days "after the last pleading directed to that issue."

The record shows that appellant's demand for a jury was dictated into the record. No objection was made to this form of a demand. Anyone familiar with court procedure knows that pleadings, motions, etc., are dictated into the record. This court upheld such procedure in Calhoun v. Robinson, 180 Iowa 538, 544, 163 N. W. 374. The demand was timely. The court in refusing appellant's demand for a jury trial did not correctly interpret Rule 177 when it stated, "* * * and the defendant if he desires a jury, must file his demand at the time he files his answer in the case." The court evidently was of the opinion that the written demand had to be endorsed upon the pleading. The Rule does not so provide. A party might be perfectly will-

ing to try one issue to a jury and another to the court. I think the Rule recognizes such a situation. Under our court procedure the demand might be by separate pleading or be dictated into the record, as was done in this case. There can be no question that under a fair and just interpretation of the Rules, appellant, at the time he discovered the appellee's issue-changing amendment, had a right to insist upon a jury trial. While the whole record shows that appellant sought to have a jury at all times, the majority opinion rather questions whether a proper demand was made for a jury trial. Any doubt in this respect is removed by simply reading the record. The concluding paragraph of the demand of appellant for a jury, as dictated into the record, is as follows:

"Wherefore this defendant now demands that the *issues as given in the pleadings* in this case be submitted to the jury for their determination as a regular jury case, and the defendant moves that he be accorded on this demand for jury trial."

The court did not hold that the demand had not been made; the court simply held that the appellant had not complied with the Rule, and the court's conception as to what the Rule required in that respect is because of a failure to correctly interpret such Rule. The court was of the opinion that the demand had to be endorsed upon the pleading. The answer to the amendment was a pleading and under the court's interpretation the appellant could have endorsed a demand for a jury trial upon that pleading. To adopt a pleading in effect is again pleading and speaks as of the date of its adoption. When appellant first learned of the amendment he acted promptly. He was not negligent; yet the majority opinion penalizes him on account of the failure of the clerk to perform a duty enjoined upon that official by the Rules. Certainly Rule 177 does not have any priority over Rule 82. How could appellant take action as to a pleading when its existence was unknown to him?

The demand of appellant for a jury trial was resisted by appellee by dictating into the record the following:

"The plaintiff denies that this case is in any jury assignment by any consent or action or conduct on her part; denies that she ever did anything to waive Rule 177 or did anything

to give the defendant. any right to a jury trial in this case, insisting all the time that the case was not one for the jury because no proper demand was ever made for a jury."

The court, in ruling upon the demand of appellant for a jury trial made on March 1, 1944, denied such demand, holding that appellant had not complied with Rule 177 and that, such being the case, the court was without discretion as to such allowance. I do not think the court was correct in holding that it had no discretion in the matter. Under the record showing that the case was fully at issue until the amendment was filed February 16, 1944, that such amendment changed the issues and did not come to the attention of appellant until March 1, 1944, because of the failure of the clerk to deliver to appellant the copy thereof, I think the court, under the Rule, had discretion in allowing appellant a jury trial and that the refusal of the court to grant such request amounted to an abuse of discretion.

I would reverse the case.

HALE, C. J., and MILLER and MULRONEY, JJ., join in this dissent.